## Lerch *versus* Stichter.

Bail under the 33d section of the act of 12th July, 1842, to abolish imprisonment for debt, are not released from liability, by the property of the defendant being levied upon and sold, under a subsequent execution.

ERROR to the court of Common Pleas of *Schuylkill county.*

*Statement of the plaintiff.*—The plaintiff, *William Lerch,* obtained a judgment against *John Ellwood,* for $34 75, on the second day of June, in the year 1843, before George Heisler, a justice of the peace of Schuylkill county. An execution was immediately issued and levied upon personal property of the defendant, sufficient to satisfy it. *After the levy was made,* on the same day, George H. Stichter, the present defendant, entered into a recognizance of bail for a stay of execution, according to the provisions of the 33d section of the act to abolish imprisonment for debt, passed July 12, 1842, and the execution was superseded. Before the stay of execution expired, all the property owned by John Ellwood, at the date of the recognizance, (and of greater value than the amount of this judgment) was sold by the sheriff of Schuylkill county, under executions issued after the date of the recognizance. When the stay expired the plaintiff issued an execution on his judgment, which was returned *Nulla Bona.*

A *scire facias* was issued on the recognizance of bail by the justice of the peace, before whom it was taken, and judgment rendered by him against the defendant, George H. Stichter, who appealed to the court of common pleas of Schuylkill county.

Upon the trial in the common pleas, the facts above stated having been proved and admitted, KIDDER, President, charged the jury that the plaintiff having shewn no breach of the condition of the recognizance, could not recover. The plaintiff excepted to the charge of the court, and issued a writ of error.

Error assigned:

The court erred in charging the jury that the plaintiff could not recover.

XXXIII SEC. of the act of July 12, 1842, entitled an act to abolish imprisonment for debt—*Pamp. L.* 339:

"A defendant against whose body, by the provisions of this act, an execution cannot be issued by an alderman or justice of the peace, shall be required, in order to obtain an appeal, stay of execution, or adjournment, to give a bond or recognizance in the nature of special bail, conditioned that no part of the property of the defendant which is liable to be taken in execution, shall be re-

[Lerch *v.* Stichter.]

moved, secreted, assigned, or in any way disposed of, except for the necessary support of himself and family, until after the plaintiff's demand shall be satisfied, or until the expiration of ten days after such plaintiff shall be entitled to have an execution issued on the judgment obtained in such cause, if he shall obtain judgment ; and if the condition of such bond or recognizance be broken, and an execution on such judgment be returned unsatisfied in whole or in part, the plaintiff in an action on such bond or recognizance, shall be entitled to recover the value of the property so removed, secreted, or assigned."—*Dunlop Dig.* 868.

The case was argued by *Parry* for plaintiff in error, and by *Cumming* for defendant.

The opinion of the court was delivered April 23, by

BELL, J.—The 33d section of the act of July, 12, 1842, abolishing imprisonment for debt, directs that a defendant whose body is not subject to be taken, in execution under the act, shall, in order to obtain an appeal from the judgment of a justice of the peace, stay of execution, or an adjournment of the hearing of his case, give a bond or recognizance, " conditioned that no part of the property of the defendant, which is liable to be taken in execution, shall be removed, secreted, assigned, *or in any way disposed of*, except for the necessary support of himself or family, until the plaintiffs demand shall be satisfied, or until the expiration of ten days after such plaintiff shall be entitled to have an execution issued on the judgment obtained in such cause, if he shall obtain such judgment;" and if the condition be broken, the act goes on to give the plaintiff a remedy on the bond or recognizance. In the case on hand, such a recognizance was given, for stay of execution after judgment recovered.   Before the stipulated stay expired, an execution, at the suit of another creditor, swept away the property of the defendant, and thus baulked the first creditor of his remedy by execution.   The court below was of opinion this was no violation of the condition, inasmuch as the second execution was not the act of the defendant.   But this determination fails to give full effect to the terms of the recognizance.   Literally taken, it prohibits every disposition of the defendant's goods, (except for necessaries) and we think it plain, this literal meaning is in harmony with the spirit and object of the act.   If this were not so, instead of affording protection to the vigilant creditor, as. doubtless was its object, it would almost certainly secure his defeat, where the defendant happened to be insolvent, by exciting the action of other creditors, who would have nothing to do but enter bail for stay of execution, and then issuing process themselves secure the fruit of their stratagem.   Or, the debtor himself, prompted by the feeling, too apt to be engendered by the legal pursuit of

a debt, would be very likely to adopt this course as a means of postponing a creditor disliked, because prompt, in favor of those who had been more lax and indulgent; and thus, the maxim, *vigilantibus, non dormientibus, jura subvenient*, would be subverted, without, I am sure, any such intent on the part of the law makers. Were the statutory condition stipulated in *pais*, as a covenant between contracting parties, it will scarcely be questioned, a breach of it would be involved by the subsequent action of a third party taking in execution the goods of the defendant. It would be in vain to urge this was the result of no immediate act of the latter. Regarded as a proceeding which the debtor might have prevented by the payment of the debt due the last executing creditor, it might fairly be considered as an act perpetrated by the defendant in violation of his covenant, and this would bring him directly within the principle which denies to a covenantor the power by any act of his own, without the consent of the covenantee, or the intervention of legislative aid, to defeat or even qualify his express undertaking. But esteemed simply as the act of a stranger, it falls under the rule that a covenantee's right to have a covenant performed, shall not be defeated or prejudiced by the act of a third party. It has been truly said, the admission of a different rule would indeed be to furnish the means of fraud and collusion to an alarming extent; therefore, notwithstanding the difficulties that may attend the execution of a covenant, because of the acts of a total stranger, the covenantor cannot claim an exemption, and if the performance be rendered impossible, he must answer the breach in damages. *Platt on Cov.* 594–5. So far is this carried, that even piracy, unless specially provided against, is no excuse for the non performance of a covenant to bring home a freight from a foreign port. Bright *vs.* Cowper, 1 *Brownlow & Gould* 21; 8 *East* 445; 7 *T. R.* 385. What is there in our statute that should vary this understanding of the undertaking in question? But one reason has been suggested, and this is founded in conjecture, and not in any supposed absence of analogy between a covenant by statutory recognizance and a private specialty. It is that appeals and adjournments of further hearing, are by the act, put in the same category with stay of execution; and it is supposed, it could not be intended to exact what might be equivalent to absolute bail, for either of the former purposes. The answer is, the bail required is not absolute; but if it were, why should not absolute bail be stipulated on appeal or adjournment? The one hundred dollar law, prescribing the terms of bail on appeal, and for stay of execution, allowed the alternative of a surrender to prison, in discharge of the surety; but the act of 1842, abolishing imprisonment for debt, abrogated the alternative, and as a consequence, a change in the terms upon which these privileges are to be conceded, became necessary. This was at first effected by the

[Lerch *v.* Stichter.]

last mentioned statute, substituting the chattels for the body of the debtor. Donley *vs.* Brownlee, 7 *Barr* 109, and see Adams *vs.* Null, 5 *Watts & Serg.* 363. Afterwards the act of 20th March, 1845, *Dun Dig.* 928, made the bail absolute, both in appeals and for stay of execution, thus adopting the policy thought to be so unreasonable by the defendant. As to adjournment, the attachment of the defendant's goods being the only security the plaintiff has for the appearance of his antagonist, there would seem to be a fitness in extending the same security, if adjournment means a postponement of a final determination.

The construction intimated is strongly countenanced by the provision of the 35th section, to the effect that after a defendant has given the bond required by the 11th section of the act, "he shall not sell, assign, or dispose of any part of his property, which is not exempt by law from execution," &c. Here is a marked change of condition, which cannot be ascribed to accident. *This* in terms makes the bail liable for all interferences with the property levied. Had not a difference been intended, it is impossible to believe this striking change in the language of the same statute could have occurred.

These considerations leave us without doubt that bail for stay of execution under this act, is bound to account for the goods of the defendant, after the expiration of the stay, as against all the world; and if he fail to do so, he must answer in their value; a levy and sale, under subsequent execution, excuses him not.

Judgment reversed and *venire de novo* awarded.