## Haddington Italian American Club License

*Benjamin R. Donolow*, for appellant.

*Russell C. Wismer*, for Pennsylvania Liquor Control Board.

CRUMLISH, J., May 22, 1956.—This matter is before us on an appeal from the suspension of a liquor license.

On the date set for a hearing on the appeal, appellant's counsel ingeniously raised this question of law, which must be determined preliminarily: Where the only witness who testified against appellant at the liquor control board hearing dies while an appeal from the board's ruling is pending, may the court of quarter sessions admit his testimony at its hearing on the cause over objection of appellant?

It has been a long settled rule that when counsel for the respective parties in interest so stipulate, the entire record of the proceedings before the liquor control board may be admitted in the appeal hearing, with the understanding that the presiding judge in the quarter sessions court will draw his separate conclusions therefrom, the cause being heard de novo.

In the instant case, the Commonwealth offered into evidence the notes of testimony given before a liquor control board examiner. Counsel for appellant objected to their admission, thus raising the legal question we now consider.

At the appeal hearing in quarter sessions court, respective counsel requested an interpretation of the Evidence Act of May 23, 1887, P. L. 158, sec. 9, which provides as follows:

"Whenever any persson (sic) has been examined as a witness in any civil proceeding before any tribunal of this Commonwealth or conducted by virtue of its order or direction, if such witness afterwards die, or be out of the jurisdiction so that he cannot be effectively served with a subpoena, or if he cannot be found, or if he become incompetent to testify for any legally sufficient reason, and if the party, against whom notes of the testimony of such witness are offered, had actual or constructive notice of the examination and an opportunity to be present and examine or cross-examine, properly proven notes of the examination of such witness shall be competent evidence in any civil issue which may exist at the time of his examination, or which may be afterwards formed between the same parties and involving the same subject matter as that upon which such witness was so examined; but for the purpose of contradicting a witness, the testimony given by him in another, a former proceeding, may be orally proved."

Since the only testimony offered before the board's examiner in the instant case was that of the deceased witness, a police officer, we have an interesting dilemma. If we exclude the testimony of the deceased, we have no evidence of the alleged misconduct on the part of appellant. If we deem it admissible under the Act of 1887, we may be called upon to give a new con-

notation to the phrase "de novo" as used in the Liquor Code, and, further, such action may be in derogation of the constitutional right of the accused to confront and cross-examine his accuser as provided by constitutional safeguards in criminal proceedings.

I. We turn first to a consideration of the nature of the action of the liquor control board. *Is it a civil proceeding or a criminal one?*

Among the general powers enumerated under the Liquor Code of April 12, 1951, P. L. 90 sec. 207, we find, inter alia, the power: "(d) To grant, issue, suspend and revoke all licenses and permits authorized to be issued under this act and the regulations of the board." Under section 209 of the Act of 1951, supra, the officers and investigators of the board as are designated enforcement officers or investigators "are hereby declared to be peace officers and are hereby given police power and authority throughout the Commonwealth to arrest on view, except in private homes, without warrant, any person actually engaged in the unlawful sale, importation, manufacture or transportation, or having unlawful possession of liquor, alcohol or malt or brewed beverages, contrary to the provisions of this act or any other law of this Commonwealth . . . ".

Article IV of the Act of 1951, supra, captioned "Licenses and Regulations; . . . and subcaptioned (A) Liquor and Alcohol (Not Including Manufacturers)", sets forth in detail the authority of the board to issue, renew and/or revoke licenses.

From a reading of this section it is abundantly clear that a liquor license is granted only when strict regulations are complied with by the applicant. The law is civil in scope, although there are certain criminal attributes connected with violations incidental to the revocation of a liquor license.

No one has an absolute right to a liquor license merely because he makes application. The license is not a property right, but rather is a privilege, which when granted may be taken away without compensation to the holder. The regulation of the sale of intoxicating liquors is a matter peculiarly within the police power of the States: Spankard's Liquor License Case, 138 Pa. Superior Ct. 251, 258-59 (1939). The machinery established for the control of the flow of liquor in our Commonwealth's commerce is civil in nature and in its administration. To the criminal law side of the courts is left the jurisdiction to punish violators of specific penal statutes designed to control intoxicating beverages within the Commonwealth; it is for the civil side of the law to determine whether or not a license was properly granted, refused or revoked, as the case may be.

We conclude, therefore, that section 9 of the Act of 1887, supra, has application in the matter before us. This conclusion is in keeping with the holding in Cowperthwait v. Lamb, 373 Pa. 204 (1953), where the court determined that a hearing before the Secretary of Reveune was not of a criminal nature. Mr. Justice Chidsey stated, at page 211: "If the respondent in the proceeding before the Secretary has committed a criminal offense, such is dealt with under the criminal processes of the law". In our opinion, the same is true of a hearing before the liquor control board.

II. We next consider whether or not a hearing before an examiner of the liquor control board constituted a tribunal within the purview of the words of the Act of 1887, supra.

Appellant objects to the admission of this testimony on the ground that "a hearing before the examiner of the Pennsylvania Liquor Control Board is an administrative procedure before an officer of an administrative body rather that a judicial procedure before a

tribunal and that admission of the notes of testimony in the instant case, not having been given before a tribunal, does not fall within the purview of the words of the statute and should not, therefore, be admitted into evidence."

Prior to the Act of 1887, it was a well settled, common law principle that testimony of a witness given before a tribunal other than a court of record was admissible at a subsequent hearing of the same cause if the witness was deceased.

In McAdams v. Stilwell, 13 Pa. 88 (1850), the litigants agreed to submit their cause to three referees; after a hearing and report, exceptions to the report were taken. At the hearing before the common pleas court, testimony given before the referees by a witness since deceased was offered. The court refused to admit the testimony, acting on the erroneous conclusion that the appointment of the referees was a nullity; therefore, any testimony given before them was null. On appeal, the Supreme Court held there was authority in the referees to hear and determine the cause, that the testimony given before them was admissible at the appeal hearing; for that reason the decision of the court of common pleas was reversed and a new trial was awarded.

An able and enlightening discussion of the common law rule in civil cases concerning the admissibility of such evidence appears in an opinion by Rice, P. J., in Keim v. City of Reading, 32 Pa. Superior Ct. 613, 616, 617, 619 (1907). This was an appeal from a report of viewers appointed to assess damages sustained by plaintiff for the city's appropriation of his land. One William M. Fulton testified before the viewers. No notes of testimony were taken. Prior to the hearing on appeal, said Fulton died. At the appeal hearing, plaintiff offered to prove the testimony given by Fulton by his own testimony. It was held inadmissible. On

appeal, our Superior Court found that section 9 of the Act of 1887 did not change the long accepted common law rule of the Commonwealth, that: "Apart from formal depositions, there were two recognized modes whereby the testimony of the witness was reproduced: First, by properly proven notes of his testimony; secondly, by the testimony of a person who would swear from his memory to its having been given . . . ". This latter method, the court pointed out, was from necessity, and was a highly useful one because ". . . in many judicial proceedings, such as trials before justices of the peace, before arbitrators and viewers . . . the testimony is not required to be, and is not customarily, reduced to writing . . . ".

It is abundantly clear that the nature of the proceeding in which the testimony was first given was not controlling on the issue of the admission of testimony of a subsequently deceased witness.

In direct answer to appellant's objection that the liquor control board does not constitute a tribunal within the purview of the Act of 1887, supra, we refer to the case of Crosetti's Estate, 211 Pa. 491 (1905), wherein the court interprets the word "tribunal" as used in the Act of 1887, supra.

In the Crosetti case, the court dealt with section 4 of the act, wherein the pertinent language reads as follows: "In any civil proceeding before any tribunal of this Commonweatlh, or conducted by virtue of its order or direction . . . ". The similarity of wording between the foregoing provision and that found in section 9 of the same act, which we are considering, is readily apparent. The court stated, at pages 494-95: ". . . The fourth section of the act of 1887 is intended to cover the competency of witnesses in a civil proceeding before any tribunal of the Commonwealth. The tribunal may be a register of wills, master, auditor, arbitrator, referee, court of common pleas, at law

or in equity, the orphans' court, quarter sessions, the Superior or Supreme Court, or any other tribunal created by law to try causes of action between contesting parties. . . ."

In view of the foregoing authorities, we conclude a hearing before the liquor control board constitutes a tribunal within the purview of the Act of 1887, supra.

III. Having concluded that an action before the liquor control board is a civil proceeding and a tribunal within the meaning of the Act of 1887, supra, is there merit to appellant's objection that *to permit the testimony into evidence would be in derogation of the constitutional right of the accused to confront and cross-examine his accuser?*

Article I, sec. 9, of the Constitution of the Commonwealth of Pennsylvania, reads, inter alia, as follows:

"In all criminal prosecutions the accused hath a right to be heard by himself and his counsel, to demand the nature and cause of the accusation against him, to meet the witnesses face to face, . . . ."

We could quickly dispose of appellant's contention by emphasizing that the proceedings in the quarter sessions court involving appeals from the action of the liquor control board are civil in nature, as has been heretofore discussed; therefore, this constitutional provision does not apply. Since, however, it is frequently argued that the board's action is penal in nature, proceedings before it should be considered criminal, so far as protecting the rights of appellant, we have given added consideration to this argument.

In the case of Brown v. Commonwealth, 73 Pa. 321 (1873), Brown had been on trial for the murder of one Daniel S. Kraemer. The Commonwealth sought to introduce notes of testimony given by a witness on a preliminary hearing before the committing magistrate, said witness being deceased at time of trial.

The offer was objected to, but the evidence was allowed. This was one of the bases for Brown's appeal. In affirming the action of the lower court, Chief Justice Read wrote an exhaustive opinion wherein he considered both the United States constitutional provisions and the Pennsylvania provisions for the right of an accused to meet the witnesses against him face to face. After citing numerous authorities, he concluded there was no error in allowing the testimony of the deceased witness into evidence.

It is not open to question that testimony of a witness given at a former trial, who is unavailable as a witness at a subsequent hearing on the same cause, is admissible. Dealing with the constitutionality of such action, Chief Justice Paxson, in Commonwealth v. Cleary, 148 Pa. 26, 39 (1892), stated: "Where a witness has been examined in the presence of the accused, and the latter has had a full opportunity to cross-examine him, we think the additional requirement, that the defendant should meet his accuser face to face, is fully complied with."

The court reaffirmed this principle in Commonwealth v. Keck, 148 Pa. 639 (1892), in a per curiam decision stating: "We do not think it was error to admit in evidence what William Nipsch testified to at a preliminary examination of the appellant. The witness was deceased at the time of the trial, and his testimony at the examination referred to was taken in the presence of the appellant and his counsel. Moreover, he was cross-examined at length by the appellant's counsel. That evidence, taken under such circumstances, may be admitted upon the trial, is settled by numerous authorities. It is sufficient to refer to Commonwealth v. Cleary from the oyer and terminer of Clinton county, decided at the present term [148 Pa. 26], where the subject is discussed at some length. . . ."

In 1882, Justice Mercur, in McLain v. Commonwealth, 99 Pa. 86 (1881), stated, at page 97: "It is undoubted law that the testimony of a deceased witness given on a former trial between the same parties in the same issue, and duly proved, is admissible in a civil case. The authorities are not in entire harmony as to the application of the same rule in criminal cases. The preponderance of authority is that the rule does so apply, if the witness be dead: [authorities cited.]"

While in the McLain case, supra, the court refers to a former trial, as against a former hearing, still it is significant that the principle was operative, even before the Act of 1887, supra.

A broader concept of the principle is set forth in Commonwealth v. Ryhal, 274 Pa. 401, 409 (1922). This was an appeal from a conviction on a charge of first degree murder. The victim, a 14-year-old girl, was assaulted by the accused. She recovered from injuries received sufficiently to testify at the preliminary hearing against the accused who was then charged with assault and battery with intent to kill. She died later as a consequence of the assault and before the accused came to trial, whereupon an indictment was found against defendant charging him with murder. The evidence of decedent obtained at the preliminary hearing was admitted into evidence. This was one of several grounds on which appeal was taken. Our Supreme Court held there was no error in the trial court's action in allowing the testimony into evidence.

On page 411, the Supreme Court held: "While there has been such contrariety of view among the courts on the question of the admissibility of the testimony of a witness deceased at the time of trial which had been given against the accused at a preliminary hear-

ing, the very complete note to the case of State of South Dakota v. Hefferman, 25 L.R.A. (N.S.) 868, which reviews most of the cases on the question, announces the conclusion that the overwhelming majority of the courts have favored the view that such testimony is admissible, where the accused person has had the opportuntiy to subject the witness to cross-examination, provided he was present as the party charged with the offense which was being investigated and the offense there charged and the one being tried are substantially the same. 'Generally, the viva voce examination of a witness in the presence of the party on trial is required, because it is the best evidence. The direct and cross-examinations are the best means of eliciting the whole truth, and the manner of the witness is one of the tests by which to determine the degree of credit to which he is entitled; but this is not always attainable, and what a deceased witness, or one who from other causes has become incapacitated to give evidence, has sworn on a former trial or preliminary examination where the accused had the opportunity to cross-examine the witness, is admitted on the principle that it is the best of which the case admits. Such testimony is not open to the objections ordinarily urged against hearsay or derivative evidence, having been delivered under the sanction of an oath, and the adverse party having had the full benefit of a cross-examination. It is therefore admitted upon the principle of necessity so as to prevent a defeat of the ends of justice': 8 Ruling Case Law, section 209, p. 213."

We draw on these criminal cases to emphasize our conclusion that in a civil proceeding before a duly constituted tribunal, where there has been an opportunity for cross-examination, the testimony offered at such a hearing is admissible on a subsequent trial even though the witness be deceased, when the same iden-

tity of persons and cause exists. Under the circumstances of the case before us, no constitutional safeguards will be violated by the admission of the testimony of the now deceased witness.

IV. In passing, we observe that one of the bases for appeal in the Ryhal case, supra, was that the stenographer at the preliminary hearing was not competent. Since no objection to the stenographer's competency had been raised when the testimony was offered, the Supreme Court found no merit to that appeal question.

In addition to the requirements set forth in the Ryhal case for the admission of a deceased's testimony, there must also be a showing that the stenographer was competent.

We find, in Ingram v. Pittsburgh, 346 Pa. 45, 47 (1942), the following statement: "It is well-settled that whenever the testimony of a witness has been taken down stenographically, the ability of the person so taking it must be shown, unless he or she is an official court stenographer . . . ". The issue on appeal in the Ingram case, supra, was whether or not the trial judge properly allowed evidence given by plaintiff before the liquor control board to be admitted into evidence in a trespass action. This evidence was introduced for the sole purpose of attacking the credibility of plaintiff, but that was not the ground for his objection. The appeal ground was that the portions of testimony read into the record was not properly authenticated. This position was sustained.

It is necessary to consider, then, the quality of the stenographer who took the notes of testimony at appellant's hearing before the examiner. Although the testimony may be admissible in every other way, if the notes are not properly authenticated, we should have to rule them inadmissible.

The question of the competency of the stenographer on the state of the record before us is left undecided.

V. Finally, *may we admit this testimony in a proceeding de novo?*

The Act of 1951, supra, instructs the quarter sessions court to hear an appeal from revocation or suspension "de novo". A de novo proceeding is defined as: "Anew; afresh; a second time." Black's Law Dictionary, 516 (3d Ed. 1933).

It is appellant's argument that because the court's hearing is de novo, the testimony is inadmissible.

It is not open to question that after seeing the witnesses and hearing the testimony afresh, the trial judge may make findngs independent of those reached by the board.

While considering the action of a court of common pleas in an appeal from a revocation of suspension of motor vehicle operating privileges, our Supreme Court, in Commonwealth v. Emerick, 373 Pa. 388, 395 (1953), used strong language to the effect that the court of common pleas must hear the matter de novo, and that: "In such *de novo* hearing neither the action of the Secretary nor the testimony taken before him, or his representative, is properly a part of the record. . . ."

On pages 395, 396, Mr. Justice Allen Stearne says further: "It is argued that since the licensee appeared *before the Secretary* and was given full opportunity to cross-examine his accusers and to present his defense the Secretary's discretion should be final except for fraud, accident, or mistake and that no appeal *on the merits* should be allowed. But, as above stated, under The Vehicle Code the Legislature has merely created an administrative agency, albeit the exercise of its administrative function is in some instances necessarily judicial in nature. . . ."

The liquor control board is an administrative agency similar in purpose to that of The Vehicle Code. Query: Should not the same result then follow, although the proceeding is before the court of quarter sessions and not the court of common pleas? The answer would appear at first blush to be yes. Research, however, discloses that there is a difference in the scope of appellate review between the two.

In motor vehicle cases the authority of the appellate court is on certiorari. Its review is limited to determining whether the findings of the court below are supported by competent evidence and to correcting conclusions of the law erroneously made: Commonwealth v. Strobel, 375 Pa. 292, 294 (1953); Commonwealth v. Eisenmenger, 365 Pa. 127 (1950); Commonwealth v. Garman, 361 Pa. 643 (1949).

In the case of Commonwealth v. Herzog, 359 Pa. 641, 643 (1948), it was held error on the part of the court of common pleas that its primary concern was whether the action of the Secretary of Revenue was justified by the available evidence in the case. Emphasizing the function of the hearing on appeal as being one of "de novo" jurisdiction, Mr. Justice Jones stated, at page 643: ". . . the court's duty in the premises was to determine independently, on the basis of the testimony adduced at the hearing on the appeal, whether the suspension was merited. One of the principal offices of the appeal, in obedience to constitutional requirements, is to furnish a judicial hearing on the merits. . . ."

The cases involving appeals from liquor control board decisions rest on a broader base than certiorari. In Burrell I. B. P. O. E. of W. 737, Liquor License Case, 172 Pa. Superior Ct. 346 (1953), Judge Hirt said, at page 348: "The 1951 Code in §464, 47 PS §4-464, provides for an appeal to this court from a decree sustaining the action of the Board in refusing

to issue a license. Accordingly our examination of the present record goes beyond the question of the regularity of the proceedings and includes a review of the proofs to determine whether the Board abused its discretion in refusing the license. The exercise of administrative discretion under the Liquor Code is always subject to judicial review. Hotchkiss Liquor License Case, 169 Pa. Superior Ct. 506, 511, 83 A. 2d 398. The lower court recognized that it could not substitute its discretion for that of the Board and that the only question before it was whether the license was refused in a reasonable exercise of discretion by the Board. . . ." See also Zermani Liquor License Case, 173 Pa. Superior Ct. 428, 431 (1953).

In Rizzo Liquor License Case, 174 Pa. Superior Ct. 143, 147 (1953), the lower court held that it was mandatory that the board transfer a license when the requirements of the law were met. On appeal, Judge Hirt held that the board, in the exercise of proper discretion, was empowered to grant or refuse a transfer of a license ". . . even where the application and the premises formally comply with legal requirements". Since the case on its merits showed a proper field for the exercise of administrative discretion, the order of the lower court was reversed.

The case of Commonwealth v. Funk, 323 Pa. 390, 398-399 (1936), an appeal from suspension of automobile operator's license clearly indicates that such legislative creations as the Public Service Commission, the Workmen's Compensation Board, the Board of Moving Picture Censors and the Liquor Control Board perform an administrative rather than a legislative or judicial function. One issue to be determined was ". . . whether the hearing was de novo, or to review the record as it existed when the petition . . . was filed in the common pleas court". The court held the language of the section of The Vehicle Code being con-

sidered, clearly indicated that it was the duty of the court to hear the matter de novo. It was held to be error that testimony taken before the Secretary of Revenue or his representative was made a part of the record.

On page 399, the court stated: ". . . If the proceedings before it were in the nature of a certiorari, or a review of the action of the Secretary of Revenue to determine whether he had abused his discretion, then such testimony properly would be a part of the record of this case. But the act otherwise provides, and it may be used only collaterally to impeach the credibility of a witness."

We come then to the inclusive question, *what is the authority vested in the court of quarter sessions on an appeal from the action of the board?*

Section 464 of the Liquor Code of 1951, which deals with hearings upon refusal of licenses, renewals or transfers, and appeals to the court of quarter sessions, reads, inter alia, as follows: ". . . The court shall hear the application *de novo* on questions of fact, administrative discretion and such other matters as are involved. . . . The court shall either sustain or over-rule the action of the board. . . ." (Italics supplied.)

Section 471 of the same act which deals with revocation and suspension of licenses before the board, provides, inter alia: ". . . Hearings on such citations shall be held in the same manner as provided herein for hearings on applications for license." It further provides: ". . . the right to appeal to the court of quarter sessions . . . in the same manner as herein provided for appeals from refusals to grant licenses. Upon appeal, the court so appealed to shall, in the exercise of its discretion, sustain, reject, alter or modify the findings, conclusions and penalties of the

board, based on the findings of fact and conclusions of law as found by the court." · ·

In Booker Hotel Corporation Liquor License Case, 175 Pa. Superior Ct. 89, 92, 93 ·(1954), the principles enunciated in the earlier cases, heretofore cited, are repeated. President Judge Rhodes, stated at page 93: "The court of quarter sessions is not authorized to exercise *administrative discretion;* this is vested in the Board. As said in Hotchkiss Liquor License Case, 169 Pa. Superor Ct. 506, 511, 83 A. 2d 398, 400: 'There is a marked distinction between a court substituting its judicial discretion for a bureau's administrative discretion and a court, in the exercise of its judicial discretion, finding a bureau guilty of an abuse of its administrative discretion.' "

The appeal in the Booker case, supra, was from an order of the court of quarter sessions sustaining the action of the Pennsylvania Liquor Control Board in refusing to transfer a hotel liquor license. An examination of the whole record, as it appears in volume 2246 of the paper books of the Superior Court of Pennsylvania discloses that while the proceedings before the court of quarter sessions was declared "de novo", the record of the hearing before the board was submitted by agreement to the court with no new or additional testimony. The findings of the court were based on the record presented to the board; the quarter sessions court found there was no abuse of discretion apparent on the record, and therefore sustained the board's action.

Appellant's argument before the Superior Court was, inter alia, that the trial court had erred in failing to exercise its own independent discretion, upon hearing de novo, that the court merely reviewed the record to determine if the control board abused its discretion. Appellant relied heavily on the motor vehicle cases as sustaining the proposition that it was the intention

under the statute that the court "should come to grips with the matter at the very same stage or level it came before the board".

The opinion by the Superior Court specifically pointed out that the case of Commonwealth v. Herzog, supra, involving The Vehicle Code, was plainly inapplicable. In affirming the action of the lower court, President Judge Rhodes stated, at page 92: ". . . It was not for the court below to substitute its discretion on the same facts as found by the Board. On such facts it was for the court to determine whether the Board had abused its administrative discretion. [Cases cited]".

This brings us to the question at hand. Our Superior Court held the decision in Commonwealth v. Herzog, supra, inapplicable to the situation in the Booker case, supra, and further, rejected the contention that the rules applicable to The Vehicle Code were similarly applicable to the Liquor Code.

Our Superior Court has used liberality in its construction of the Liquor Code of 1951, in accordance with section 104(a) thereof, which reads as follows: "Interpretation of Act.— (a) This act shall be deemed an exercise of the police power of the Commonwealth for the protection of the public welfare, health, peace and morals of the people of the Commonwealth and to prohibit forever the open saloon, and all of the provisions of this act shall be liberally construed for the accomplishment of this purpose."

In view of the fact that the court of quarter sessions did not hold an independent hearing on the merits of the issue in the Booker case, it did not comply with the basic concept of de novo, by stating it was taking the record of the board as de novo. Yet its action was not deemed to be error.

In the instant case it is our well considered opinion that were the witness who testified at the hearing be-

fore the board alive and available to give his testimony before the court of quarter sessions, then on appeal, should the record of his testimony formerly given before the board be offered and objected to, such objection would have to be sustained. Since the witness is deceased, however, and the Act of 1887, supra, specifically allows such testimony to be introduced at a subsequent hearing on the same cause, we conclude that the testimony in question should be admitted in this appeal hearing before the court of quarter sessions. Such a conclusion we think is in keeping with the liberal interpretation to be placed on the Liquor Code of 1951. Furthermore, no constitutional rights of appellant are invaded thereby, for either party has the statutory right to appeal the decision of the court of quarter sessions to the Superior Court.

VI. In summary, we conclude as follows: (1) A hearing before the liquor control board is a civil proceeding; (2) the liquor control board is a tribunal within the meaning of the Act of 1887, supra; (3) the sworn testimony of a witness who has died prior to the hearing on appeal is admissible in the quarter sessions court on an appeal from the ruling of the liquor control board; (4) there is no deprivation of constitutional protections by allowing the testimony of this deceased witness, since this is a civil trial; (5) the phrase, "de novo", in liquor control board cases does not contemplate a hearing afresh, to the extent that testimony such as is here offered must be excluded.

Wherefore, appellant's objection to the admission of that portion of the record before the liquor control board which contains the testimony of the now deceased witness is overruled.

The case is ordered to proceed to hearing in accordance with this opinion.