## Hotchkiss Liquor License Case.

Argued July 18, 1951. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, ARNOLD and GUNTHER, JJ.

*Richard H. Wagner,* with him *Guy B. Mayo* and *Mayo & Mayo,* for appellants.

*Henry A. Frye,* with him *E. G. Potter, James H. Isherwood, Jr., Moffett, Stover, Frye & Leopold* and *Gallup, Potter & Gallup,* for appellee.

*Samuel J. Roberts,* Special Deputy Attorney General, with him *Horace A. Segelbaum,* Deputy Attorney General and *Robert E. Woodside,* Attorney General, for Liquor Control Board.

OPINION BY DITHRICH, J., September 26, 1951:

On June 24, 1949, appellants filed an application with the Pennsylvania Liquor Control Board for a hotel liquor license. The Betula Methodist Church filed a protest against the granting of the license. On September 9, 1949, the board refused the license and filed an opinion, which reads in part as follows:

"On June 24, 1949, Cecelia Hotchkiss and Angeline Faes filed with this Board an application for hotel liquor license and amusement permit for premises located on Highway Leg. Rt. No. 42043 in the Township of Norwich and County of McKean.

"On August 11, 1949, a hearing upon said application was held . . . At the said hearing, which was attended by the applicants and their counsel the evidence adduced established the following *fact:*

"1. The premises proposed to be covered by the license are located within 300 feet of the Methodist Church . . ., which institution has filed. an objection with the Board against the granting of the license.

"As provided by law, the Board. is authorized to exercise its discretion in the consideration of an applica-

tion for a hotel liquor or malt beverage license when the premises to be licensed are within three hundred feet of a church, school, hospital, charitable institution or public playground. After making a thorough review of all of the evidence, the Board is of the opinion that the *protest* should be sustained and that in the exercise of the discretion provided by the law, this application for a hotel liquor license and amusement permit should be refused." (Emphasis added.)

In its order the board said: ". . . *for the above reason* it is ordered and decreed that the . . . license and amusement permit applied for . . . be and they are hereby refused." (Emphasis added.)

No appeal was taken from the refusal of the license, but on January 3, 1950, appellants filed a new application to which the church filed the same protest. This time the board for some undisclosed reason, which may or may not be entirely proper, ignored the protest and granted the license. On appeal by the church the Court of Quarter Sessions of McKean County overruled the board, and the applicants, contending that the court in so doing "substitute[d] its discretion for that of the Board," brought this appeal.

As we have emphasized, the board in the original application made but a single finding of fact. In the second application it made no finding whatsoever; it filed no opinion and gave no reason for its change of position. In the absence of any fact-finding by the board, the learned court below made its own findings. The one with which we are primarily concerned is "4. The hotel is 181 feet, 6 inches, from the . . . [church]."

There was no change in the location of the hotel or the church between the first and second applications, and since the board refused the original application because of the proximity of the hotel to the church—and for that reason alone so far as disclosed

by the record—if it had any reason for reversing its decision on the second application it should have said so. True it is, unfortunately, that when the Liquor Control Act was amended, 1949, May 20, P. L. 1551, §2, 47 PS §744-404, to permit "any church, hospital, charitable institution, school or public playground located within three hundred feet of the premises applied for, aggrieved by the action of the board in granting the issuance of a new hotel, restaurant or club liquor license, or the transfer of a hotel, restaurant or club liquor license" to take an appeal, there was no change in the provision that only in case of the refusal of an application "the board shall file of record *at least a brief statement,* in the form of an opinion, of the reason for the ruling or order." (Emphasis added.) In our opinion, however, it would have been the better part of discretion for the board to have filed "at least a brief statement" of the reason for its ruling or order granting the license over the protest, especially since it had previously sustained the protest and denied the license.

Appellants urge upon us that the board may have reversed its previous decision because of the change in the statutory requirement for hotels, as provided in the amendatory Act of May 9, 1949, P. L. 964, §1, 47 PS §744-1001. But the fact remains that the only reason assigned for a refusal of the license was that the premises were within 300 feet of a church. The physical requirements of the hotel premises were not in issue in either case. As stated by the learned court below: "There was no dispute concerning them. The refusal of the license after the first hearing was based simply on the fact of the location of the hotel within 300 feet of the church. There has been no change in this distance and the church is still protesting. The situation is substantially the same as at the time of the first hearing. Yet the decision is different!"

We find ourselves in accord with the learned president judge of the court below in that "we cannot help feeling that, if the board had any valid reason for its sudden change in decision, it would have been eminently desirable that it be placed in the record."

In *Blair's Appeal,* 58 D. & C. 495, largely relied upon by appellants, the situation which the Court of Quarter Sessions of Philadelphia County had to deal with was materially different from that which confronted the learned court below in the case at bar. In *Blair's Appeal,* three successive applications were made by the same applicant for the transfer of a retail liquor license. In refusing the third application the board gave as its reason "that the protests, which on two occasions have been sustained, should again be upheld." But as aptly pointed out by President Judge HUBBARD in the case at bar, in *Blair's Appeal "the principal protest* [a general protest by the police bureau] *had been withdrawn and conditions had changed* since the rejection of the former applications, and the court overruled the board in rejecting the third application." After quoting the following from the syllabus in *Blair's Appeal*—"Where the action of the Pennsylvania Liquor Control Board in rejecting an application for transfer of a retail liquor license has apparently resulted largely from its consideration of the fact that two previous applications for the same privilege had been refused upon the basis of protests then before it, and it appears that *the principal protest has been withdrawn, that conditions have changed,* and that it is improbable that the disturbances which constitute the basis of the remaining objections would be in any way increased by the granting of the application, the action of the Liquor Control Board will be reversed. (Italics supplied)"—the court continued: "In our case there was no significant change between the first and second applications. Yet the board reversed its decision. . . .

"For years the church and the school had stood beside each other, the one standing for religion, the other for education. The board, after the first hearing, we may be warranted in assuming, was struck by the fact that the school building, transformed into a hotel, would, if licensed, stand as an unnecessary affront to the people of the church, and—we judge, without hesitation—refused the license and filed an opinion setting forth clearly and concisely its reason for such action and then, in a few months, after hearing substantially the same evidence, without giving any reason for changing its attitude, granted the license."

We find no merit in appellants' contention that the court below substituted its discretion for that of the board contrary to our ruling in *Azarewicz Liquor License Case,* 163 Pa. Superior Ct. 459, 62 A. 2d 78. There is a marked distinction between a court substituting its judicial discretion for a bureau's administrative discretion and a court, in the exercise of its judicial discretion, finding a bureau guilty of an abuse of its administrative discretion. In the *Azarewicz* case we said (p. 463) : "In the instant case our holding is but to the effect that, where a discretion is vested *exclusively* in the administrative tribunal (and not in the courts), on appeal, the court below cannot substitute its discretion for that of the board by the promulgation of an erroneous rule of law." Neither in the *Azarewicz* case nor in any other case have we failed to recognize the fundamental principle that administrative discretion is always subject to judicial review. The distinction between judicial review of administrative discretion and the substituting of judicial discretion for administrative discretion is by now well recognized by the lower courts. For illustration, in the case of *Niedzinsky Post 624, American Legion, License,* 66 D. & C. 618, the Court of Quarter Sessions of Lackawanna County, after citing the *Azarewicz* case, supra, said,

in an opinion by HOBAN, P. J., pp. 622-623: "This court, therefore, cannot substitute its discretion, even on a hearing de novo, for that of the Liquor Control Board. It can and must, however, decide, on proper evidence, whether discretion has been abused. Unless it has this power, administrative discretion may become administrative tyranny, a notion which is contrary to our whole theory of government and to the establishment of the judicial branch of government as the agency for the relief of public or private wrongs."

See also *Sylvan Seal Milk, Inc., v. Pennsylvania Milk Control Commission*, 74 D. & C. 289, where the Court of Common Pleas No. 2 of Philadelphia County said, in an opinion by GORDON, JR., P. J. (p. 306) : "The fundamental principles upon which our system of administering justice is based can no more be ignored by an administrative body charged with the performance of an essentially judicial duty, than it can be by a court of justice."

In conclusion, we are all agreed that the learned president judge of the court below did not substitute his discretion for that of the Liquor Control Board in overruling its order granting appellants a hotel liquor license, but that his action was based on his finding upon judicial review that the board had abused its discretion.

Judgment affirmed.