# Riegelsville Legion Home Liquor License Case

*William L. Goldman*, for appellant.

*Edmund P. Hannum*, for Liquor Control Board.

SATTERTHWAITE, J., April 6, 1953.—This is an appeal from the refusal of the Pennsylvania Liquor Control Board to issue a club license to appellant. Testimony and arguments of counsel were heard before the court en banc. As required by law we make the following

## Findings of Fact

1. Appellant, Riegelsville Legion Home Association, Inc., is a nonprofit corporation, duly incorporated by the Court of Common Pleas of Bucks County on May 2, 1949, having its club headquarters at Ash Lane, in northerly part of the Borough of Riegelsville, Bucks County, Pa. It is the only "person" in any manner

pecuniarily interested in the premises proposed to be licensed and no other person will be in any manner pecuniarily interested therein during the continuance of the license if granted. It is a bona fide club within the meaning of the Liquor Code and consists of a reputable group of individuals, originally organized in 1946, associated together not for profit but for legitimate purposes of mutual benefit, entertainment, fellowship or lawful convenience, having primary interests and activities to which the sale of liquor or malt and brewed beverages would be only secondary.

2. The club headquarters of appellant, being the premises proposed to be licensed, meet all the requirements of the Liquor Code and the regulations of the Pennsylvania Liquor Control Board; said premises are not located within 300 feet of any church, hospital, charitable institution, school or public playground; liquid fuels and oil are not sold upon the premises, and premises are not subject to any building or use restrictions prohibiting the sale of alcoholic beverages.

3. On March 31, 1952, appellant made application to the Pennsylvania Liquor Control Board for a club liquor license; on July 3, 1952, after hearing, the Pennsylvania Liquor Control Board entered its order refusing the club liquor license so applied for, stating in its opinion, after pointing out that the quota for Riegelsville Borough was filled and that appellant had requested that the board consider the case on the ground that the municipality is located in a resort area, as follows:

"The evidence also reveals that there is a slight increase in the population of the area surrounding Riegelsville during the summer months, there being approximately 50 summer cottages in the vicinity which are used by vacationists during that period.

"It must be noted, however, that this is an application for a club liquor license and that under such a li-

cense the sale of alcoholic beverages by the holder thereof is limited to its own members. It is, therefore, apparent that the holder of a club liquor license cannot accommodate the general public in the same manner as a restaurant or a hotel liquor licensee, particularly as to the sale of alcoholic beverages.

"The board, after reviewing all of the evidence, is of the opinion that the applicant has not established that there is an actual necessity for the issuance of a club liquor license in excess of the legal quota in this munici- pality, and that, in the exercise of the discretion authorized by law, this application for such a license in a municipality wherein the quota of licenses prescribed by law is now filled should be refused."

4. The Pennsylvania Liquor Control Board gave no other or further reasons for its decision.

5. The population of the Borough of Riegelsville according to the 1950 decennial census of the United States is 871.

6. There are presently three licensed premises in the Borough of Riegelsville, only one of which is a restaurant and computed against the quota under the Liquor Code; the other two are hotels; there are no club licenses outstanding.

7. The Borough of Riegelsville is a small, entirely residential community, located in a rural section in the extreme northerly corner of Bucks County adjacent to the Northampton County line and the Delaware River and the Pennsylvania Canal, the area surrounding the Pennsylvania Canal being designated a State Park area by the Commonwealth of Pennsylvania in 1947.

8. By reason of influx of population during vacation periods, both winter and summer, by occupants of summer cottages, homes and resort hotels, tourists and both winter and summer sportsmen, the Borough of Riegelsville is located in a resort area within the meaning of the Liquor Code.

9. The Triangle Inn, the holder of the only restaurant liquor license and the only license counting against the quota, is located in the extreme southerly part of the borough and is closed annually from October to April of the following year so that the proprietor thereof may vacation in Florida. When open, it is patronized extensively by nonresidents of Riegelsville.

10. The Riegelsville Hotel, the holder of one of the two hotel licenses, is located in the central part of the borough and is a very old establishment, apparently without any elaborate conveniences and doing very little business as a hotel, the register thereof disclosing that there were only 18 guests from October 17, 1949, until January 23, 1952. It is not a modern establishment and is not patronized to any great degree by either vacationing guests or local residents, because of its lack of modern appointments.

11. Hotel Delaware Oaks, the holder of the other hotel liquor license, is located about one-quarter mile from the proposed licensed premises and is a high-class, expensive resort hotel, doing most of its business with nonresident guests, catering both in price and in taste to outsiders rather than local inhabitants.

12. By reason of the resort nature of the community, there is actual necessity for the issuance of another liquor license in excess of the quota provided by law, in order that the over-all facilities of all the licensed establishments may accommodate both the public in general, of which the members of appellant are a constantly increasing and substantial part, as well as those who come there from other places for rest, relaxation and pleasure.

13. Appellant has a membership of approximately 160, of which 116 are members of the local American Legion Post and 44 associate members. Under the by-laws of appellant, no one may become a member of appellant if he is eligible for membership in the American

Legion Post and is not a member thereof; the associate members may equal 40 percent of the entire membership.

14. Appellant is a leading civic organization of the Borough of Riegelsville. The issuance of a liquor license thereto will promote the fellowship, well-being and continued existence of the organization and hence encourage and promote its public functions and services for the good of the whole community.

15. The application of appellant for a club liquor license was not opposed by anyone, either before the Liquor Control Board or at the hearing on this appeal; to the contrary, it was endorsed by prominent citizens of the town.

16. The issuance of a liquor license to appellant will serve the best interests of the community and will, by reason of its proportionately large membership, be an accommodation to the public notwithstanding that appellant is a club and could not sell to nonmembers.

### Discussion

There are three questions involved in this appeal: First, is Riegelsville located in a resort area within the meaning of section 461(b) of the Liquor Code, 47 PS §4-461(b)? Secondly, does this section authorize a relaxation of the quota limitations for the purpose of granting a new license in a resort area *to a club?* Thirdly, did the board abuse its discretion, under the facts presented by this appeal, in refusing to grant a license in excess of the quota under section 461(b) and in refusing to issue a club license to the present appellant under the permissive provisions of section 404, 47 PS §4-404?

On the first question, we have little difficulty in finding that Riegelsville is located in a resort area within the meaning of the Liquor Code. All the testimony so indicated and, as we understand it, no serious contention to the contrary is made on behalf of the board.

The testimony of the enforcement officers of the board, who had made a thorough investigation of the premises and the surrounding area, was in substantial agreement with that of the witnesses on behalf of appellant that there is a substantial influx of population made up of guests or transients during appropriate vacation periods, chiefly in the summer time, but not confined to that season. Guests come to the vicinity for purposes of summer cottages, summer farms and homes, children's camps and year-round sports activities in general. A resort hotel, not licensed under the Liquor Code, but accommodating 20 to 30 vacationists during the summer season, is located about a mile and one-half south of Riegelsville. The testimony clearly demonstrated that the permanent population of the community is subject to increase by reason of incoming and temporary guests, reflected in the business and social activities of the neighborhood. The cashier of the local bank testified, for example, that bank accounts therein have been one-third more active in the summer than in the winter, due, in his opinion, to the presence of outsiders. There was far more evidence of the resort nature of the area adduced at the hearing on this appeal than would be indicated by the cursory reference to the 50 summer cottages mentioned in the opinion of the board. We therefore have found as a fact that Riegelsville is located within a resort area within the meaning of the provisions of section 461 (*b*) of the Liquor Code.

The second question above stated should also be answered favorably to appellant: the resort area provisions of the Liquor Code may apply to club licenses. Section 461 of the Liquor Code is the present law relating to the restriction on the number of retail licenses to be issued in each municipality. Subparagraph (*a*) thereof limits the number of licenses to one of any class for each 1,000 inhabitants or fraction thereof, subject

to certain other provisions. Subparagraph (*b*) of the same section provides as follows:

"The board shall have the power to increase the number of licenses in any such municipality which in the opinion of the board is located within a resort area."

These provisions are taken almost verbatim from sections 2 and 3 of the Quota Act of June 24, 1939, P. L. 806.

Since the right of appeal to the Superior Court has been conferred by the legislature, it is now definitely established that an application for a new club license is subject to the quota restrictions: Goodwill Fire Company of Bethlehem License Case, 166 Pa. Superior Ct. 42; Pine Grove Hose, Hook and Ladder Co. No. 1 Liquor License Case, 167 Pa. Superior Ct. 194; Hagelgans Post No. 8253 V. F. W. Liquor License Case, 168 Pa. Superior Ct. 260; Conemaugh Club Liquor License Case, 168 Pa. Superior Ct. 589. Since, therefore, clubs are included within the *limitations* of the Quota Act, why should they be excluded from the provisions of the same act permissively *enlarging* such limitations?

The only decision involving this question to which we have been referred, and which has been disclosed by our own research, is Greene-Dreher Legion Home License, 69 D. & C. 425 (decided under the Quota Act of 1939) wherein Judge Davis for the Pike County Court stated, on page 428, as follows:

"What is there in the plain language of the act to suggest that club licenses are excluded? We can find nothing. The legislature knew that under club licenses sales of alcoholic beverages were restricted to members. Therefore, if they desired to exclude this type of license from the provisions relating to resort areas it is only reasonable and logical to assume that it would have done so by express language in the act. The legislature may have had in mind that the issuance of club licenses

would take club members from premises holding restaurant licenses thereby increasing the facilities for the accommodation of resort patrons. Neither the court nor the board has the right to pursue what it may believe to be the spirit of the law when the words of the law are clear and free from ambiguity."

Again, on page 429, Judge Davis further referred to the desirability of consistency of interpretation of the various provisions of the Quota Act, as follows:

"The term "licenses" is used in both sections 2 and 3 of the act. If we hold under Section 2 this term includes club licenses consistency demands that we ascribe the same meaning to the same term in the subsequent section."

This reasoning is all the more cogent under the Liquor Code where the quota restrictions are not only in the same act, but also in the same section as the resort area provisions. We therefore concur in the decision in the cited case and hold that the provisions of section 461(b) relating to the power to increase the number of licenses in excess of the quota may be invoked in the case of club applications.

The third question proposed above is the real heart of this appeal. Did the board abuse its discretion in refusing this license? Whether or not we can substitute our own discretion for that of the board in connection with the grant or refusal of a new liquor license is a matter, fortunately, we need not decide. In this connection, contrast the language of the opinion relating to the review of administrative discretion in Azarewicz Liquor License Case, 163 Pa. Superior Ct. 459, decided in 1948, with the phraseology of the amendments added by the Acts of May 20, 1949, P. L. 1546, and P. L. 1551, to the former Beverage License Law and the old Liquor Control Act, respectively (now both incorporated in section 464 of the Liquor Code), and compare Homestead Social and Beneficial Society

Appeal, 169 Pa. Superior Ct. 593, construing the effect of these amendatory acts in another connection, with Commonwealth v. Wagner, 364 Pa. 566, covering the analogous situation of the scope of review on appeal from a decision of the Secretary of Revenue suspending an operator's privileges under The Vehicle Code.

In any event, whether or not we can substitute our own discretion for that of the board, and without attempting to do so, it is clear that we do have power to prevent and correct an arbitrary, unreasonable and totally unjustified exercise of discretion by the board. Decisions of the board constituting an *abuse* of discretion in the grant or refusal of new liquor licenses unquestionably may be so declared and rectified by the courts on appeal: Section 464 of the Liquor Code, supra: Hotchkiss Liquor License Case, 169 Pa. Superior Ct. 506. The exercise of administrative discretion is always subject to judicial review: William E. Burrell I. B. P. O. E. of W. 737, Liquor License Case, 172 Pa. Superior Ct. 346. As pointed out in the Hotchkiss case, supra, at page 511:

"There is a marked distinction between a court substituting its judicial discretion for a bureau's administrative discretion and a court, in the exercise of its judicial discretion, finding a bureau guilty of an abuse of its administrative discretion. In the Azarewicz case we said (p. 463) : 'In the instant case our holding is but to the effect that, where a discretion is vested *exclusively* in the administrative tribunal (and not in the courts), on appeal, the court below cannot substitute its discretion for that of the board by the promulgation of an erroneous rule of law.' Neither in the Azarewicz case nor in any other case have we failed to recognize the fundamental principle that administrative discretion is always subject to judicial review."

We are satisfied that the Liquor Control Board erred in this case in finding (if it did) that Riegelsville was

not located in a resort area, in finding that the resort area provisions did not apply to club licenses, and in finding that there was no necessity for an additional license. We are also satisfied that such errors amounted to an abuse of discretion and, therefore, under the express provisions of section 464 of the Liquor Code, since these were the only matters which motivated the board in refusing this license, so far as the record discloses, the erroneous conclusions of the board should be corrected on this appeal.

For all practical purposes, and upon a realistic consideration of all the facts presented in this record, there would seem to be no serious question but that there is actual necessity for another license in the Borough of Riegelsville. The existing facilities, on the undisputed testimony, do not adequately serve the community. If we disregard the Riegelsville Hotel, which, as a hotel, is not counted against the quota, and which apparently is not availed of to any large extent by either residents or outsiders because of the nature of the establishment, it is apparent that the inadequacy of the existing licensed premises is due largely to the resort nature of the area, aggravated, of course, by the closing of the Triangle Inn during half the year, but patronized, when open, extensively by tourists.

The only existing licensed establishment continuously doing business and of a type acceptable to the many members of appellant association (who can fairly be assumed to be representative of the general public) is the resort hotel, in which they are definitly out of place in view of the outside guests to whom it caters and who, to a large degree, by their very presence, make the facilities of the hotel not generally available. The result is, according to the testimony, that many of appellant's members feel compelled to go out of town in order to obtain alcoholic beverages. This condition, arising not only out of the inadequacy of existing li-

censed premises but also most definitely from the influx of outsiders into the resort area, would be greatly alleviated by the grant of the license requested by appellant.

Although, as a club, of course, it could not sell to nonmembers, yet under the rather unusual circumstances here present, the existing membership includes a substantial fraction of the permanent residents of the community and under its bylaws it could continue (as it has in the past) to show growth in membership and hence, indirectly, to serve even a greater portion of the public as a whole. Such service to the town generally would also have the incidental effect of holding together in fellowship the leading, if not the only civic organization of the borough, encouraging and insuring the continuation of projects for the general welfare now carried on by it.

These considerations, it seems to us, dispel the argument of the Liquor Control Board that a club license would not be of any accommodation to the public; in our opinion, the board arbitrarily, unreasonably and with no foundation or regard for the actual facts, totally failed to consider or appreciate the peculiar local conditions and the substantial relationship of the club membership to the whole resident population. Therefore, its finding of no necessity and lack of accommodation for the public is without any basis and should be overruled.

We are fully aware that there are decisions indicating that questions of necessity are matters for the determination of the Liquor Control Board in the first instance and that, under the circumstances presented in such cases, the board's finding in that respect would not be held an abuse of discretion. These cases are readily distinguishable on their facts, however. In Carlton License, 67 D. & C. 136, for example, a restaurant license application sought in excess of the

quota under the resort area principle was refused by the board on the ground of lack of necessity, which decision on appeal was held not to be an abuse of discretion in view of the fact that there were already outstanding 15 licenses of a type counted against the quota in a municipality where the quota was only seven. In Greene-Dreher Legion Home License (No. 2), 75 D. & C. 84, the court, most reluctantly, affirmed the refusal of a club license in a resort area on the board's finding of lack of necessity where there were three existing licenses, two in excess of the quota. It is worthy of note that in the instant case, the quota is not now exceeded.

On the other hand, there are several other decisions, not only overruling the board on the factual question of the application of the resort area principle, but also holding its finding of lack of necessity to be an abuse of discretion and thereupon directing a license to issue in excess of the quota: In re Appeal of Sabatina, 39 Luz. L. R. 226 (1946); Farcus License, 62 D. & C. 427 (1947); Colligan Liquor License Case, 3 Bucks Co. 34 (1949); Brink License, 70 D. & C. 635 (1950); Osko License, 78 D. & C. 332 (1951). Compare Niedzinsky Post 624, American Legion License, 66 D. & C. 618 (1949), cited with approval in the Hotchkiss case, supra, where the refusal of a discretionary club license under the discretionary provisions of law relating to licensed premises within 300 feet of a church was held on appeal to be an abuse of discretion and a license was directed to be issued.

Finally, it seems to us that any possible doubt about our power to find an abuse of discretion by the board in the present case is completely removed by the recent decision in William E. Burrell I. B. P. O. E. of W. 737, Liquor License Case, 172 Pa. Superior Ct. 346. There the board refused a club liquor license under the discretionary powers provided by section 404 of the

Liquor Code, 47 PS §4-404 on the basis of a remonstrance by the police department to the effect that such a license would add to law enforcement problems in the vicinity. On appeal, the Court of Quarter Sessions of Montgomery County sustained the board, again in reliance solely upon equivocal testimony of the chief of police. The Superior Court, however, reversed and, *notwithstanding that the application was for a discretionary club license, directed that the license issue*, holding that the refusal amounted to an abuse of discretion. The opinion noted the established nature and good reputation of the organization in question and held that the decision of the board was controlled by improper considerations and unjustly discriminatory. It quoted with approval, at page 350, the following excerpt from Mielcuszny et ux. v. Rosol et ux. 317 Pa. 91, 93-94.

" 'An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will, as shown by the evidence or the record, discretion is abused'."

These principles and precedents are controlling in the present case. The board's refusal of a license to appellant was based on its misapplication of the law regarding resort areas so far as clubs are concerned and on its unjustifiable and totally unreasonable finding of lack of necessity and public accommodation in disregard of the peculiar circumstances involved. Such refusal, therefore, amounted to an abuse of discretion and must be overruled. Since these conclusions were the only matters involved, the license should be issued.

And now, April 6, 1953, the within appeal is sustained and the Pennsylvania Liquor Control Board is directed to issue a club liquor license to appellant, Riegelsville Legion Home Association, Inc., for the premises

located on Ash Lane, in the Borough of Riegelsville, County of Bucks and State of Pennsylvania, upon its paying the proper fees and furnishing the requisite bond according to law.