Cialella Liquor License Case.

Argued December 14, 1959. Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ.

*Frank O. Moretti,* for appellant.

*Sherman K. Levine,* Special Assistant Attorney General, with him *George G. Lindsay* and *Horace A. Segelbaum,* Assistant Attorney Generals, and *Anne X. Alpern,* Attorney General, for Pennsylvania Liquor Control Board, appellee.

*Thomas P. Johnson* and *Maurice B. Cohill, Jr.,* with them *Thomas V. Mansell,* and *Kirkpatrick, Pomeroy, Lockhart & Johnson,* for protestant, appellee.

*Joseph McFate* and *McFate & Rea,* for protestant, appellee.

OPINION BY RHODES, P. J., March 24, 1960:

This is an appeal from an order of the Court of Quarter Sessions of Lawrence County reversing an order of the Pennsylvania Liquor Control Board which had approved the transfer of a liquor license.

On August 6, 1958, appellant applied for the transfer of liquor license from 114 South Jefferson Street

to 30 West Washington Street in the City of New Castle. Protests were filed by religious and charitable institutions located within 300 feet of the proposed new location; one of the institutions being located only a distance of 28 feet, and the other 70 feet. A hearing was held on October 9, 1958, and the transfer was refused by the board. Upon application by the appellant, a rehearing was held on April 9, 1959, after which the board, on April 29, 1959, approved the transfer. In so far as the record discloses, the board filed no memorandum, made no findings of fact, and did not write an opinion either refusing the transfer or subsequently granting the transfer. The protestants (First Christian Church and the Y.M.C.A.) appealed to the court of quarter sessions which held a hearing de novo, made findings of fact, and concluded that the board abused its administrative discretion in granting the transfer to premises within the restricted area.[1] Accordingly, it reversed the order of the board. The applicant then appealed to this Court.

The Legislature has clearly proclaimed in the Liquor Code its policy that, when a restricted institution is within 300 feet of premises proposed to be licensed or to which a license is proposed to be transferred, such circumstance alone is sufficient upon which to base a refusal of the grant or transfer of the license. *425-429, Inc., Liquor License Case*, 179 Pa. Superior Ct. 235, 240, 116 A. 2d 79.[2]

When the board is convinced and finds that the licensing of premises within 300 feet of a restricted institution would not be detrimental to the welfare, health, peace, and morals of the neighborhood, includ-

---

[1] The appellant had held the license at the original premises since 1954. No citations had been issued against her. It was unquestioned in this proceeding that she was a fit and proper person.

[2] See sections 404 and 432(d) of the Code, 47 PS §§4-404, 4-432 (d).

ing the restricted institution, then it may, in its discretion, allow the transfer. *DeAngelis Liquor License Case,* 183 Pa. Superior Ct. 388, 397, 133 A. 2d 266. On appeal to the court below from the grant of any such license or transfer the court may not substitute its discretion upon the same facts found by the board; it may only determine whether the board had abused its administrative discretion. *Booker Hotel Corporation Liquor License Case,* 175 Pa. Superior Ct. 89, 92, 93, 103 A. 2d 486; *Her-Bell, Inc., Liquor License Case,* 176 Pa. Superior Ct. 206, 209, 107 A. 2d 572. While the board is given the power of exercising administrative discretion, its action is nevertheless subject to judicial review. *Zermani Liquor License Case,* 173 Pa. Superior Ct. 428, 431, 98 A. 2d 645.

The exercise of administrative discretion should have basis in fact, particularly where the legislative policy is to discourage the privilege granted by the board. In the absence of any finding of fact by the board, the court below made its own findings. *Weiss Liquor License Case,* 187 Pa. Superior Ct. 89, 92, 142 A. 2d 385. The significant finding by the court is that the "two institutions are restricted institutions well within the 300 foot distance . . ." As the board filed no decision its reason for approving the transfer, notwithstanding the legislative declaration discouraging the location of liquor establishments near religious, charitable, and educational institutions, is not apparent. The grant of this transfer without a declaration of the motivating considerations is further weakened by the fact that it was initially refused without a statement of the reason therefor. Such unexplained change of decision has been held to amount to an abuse of discretion in the application of this restrictive section of the Liquor Code. *Hotchkiss Liquor License Case,* 169 Pa. Superior Ct. 506, 508-510, 83 A. 2d 398. See *DeAngelis Liquor License Case,* supra, 183 Pa. Su-

perior Ct. 388, 398, 133 A. 2d 266. Under the circumstances, the decision of the court below reversing the grant of the transfer because of an abuse of discretion will be affirmed.

We realize that the Code does not require the board to file an opinion when it grants a transfer. *Haase Liquor License Case,* 184 Pa. Superior Ct. 356, 357, 358, 134 A. 2d 682. However, ". . . it would have been the better part of discretion for the board to have filed 'at least a brief statement' of the reason for its ruling or order granting the license [or transfer] over the protest, especially since it had previously sustained the protest and denied the license [or transfer]. . . . '. . . if the board had any valid reason for its sudden change in decision, it would have been eminently desirable that it be placed in the record.' " *Hotchkiss Liquor License Case,* supra, 169 Pa. Superior Ct. 506, 509, 510, 83 A. 2d 398, 399.

The fact that a board agent, who testified at the hearing on appeal to the court below, stated his impressions of the complaints against the premises and the matters considered by the board in first refusing and then granting the transfer does not supply the deficiency caused by the absence of any formal declaration of reasons by the board itself. Such matters could have been considered by the board, but the fact that they were presented to the board does not in itself indicate the facts and considerations which impelled the board to reverse its initial decision. We may not infer findings of material fact or motivating reasons from a mere conclusion of the board. See *Hamilton Unemployment Compensation Case,* 181 Pa. Superior Ct. 113, 120, 124 A. 2d 681.

The order is affirmed.

CONCURRING OPINION BY ERVIN, J.:

I concur in the result but I cannot agree with the reasoning upon which the majority opinion reaches its conclusion. In reality the majority opinion permits the court below to substitute its administrative discretion for that of the board without finding facts differently from those found by the board. This we have held may not be done. See *Azarewicz Liquor License Case*, 163 Pa. Superior Ct. 459, 461, 62 A. 2d 78. I, of course, realize that our Court has ruled that the lower court has no administrative discretion. See *425-429, Inc. Liquor License Case*, 179 Pa. Superior Ct. 235, 116 A. 2d 79 (Allocatur refused 179 Pa. Superior Ct. xxvi). The changed language used by the legislature in its amendments of 1949 and 1951 has not been considered by either our Court or the Supreme Court. If either Court would ever get around to considering this language, I do not understand how they could arrive at a conclusion denying administrative discretion to the lower court. That language is: "The court shall hear the application de novo *on questions of fact, administrative discretion and such other matters as are involved. . . .*" For a full discussion of this subject see my dissenting opinion in *425-429, Inc. Liquor License Case*, supra, at page 243. I would like to see our Court go on record and say in clear language that the court below does now have administrative discretion to grant or refuse a transfer of a license within 300 feet of a church, etc., without the necessity of finding any facts differently from those found by the board. This would place in the hands of the lower court the power to strike down mistakes of the board, which keep coming before us with some degree of regularity, and this I believe would be in accord with the intention of the legislature as expressed in the 1949 and 1951 amendments.

WATKINS, J., joins in this concurring opinion.