## Club Oasis, Inc. Liquor License Case.

440

Argued December 12, 1962. Before RHODES, P. J., ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ.

*Russell C. Wismer,* Special Assistant Attorney General, with him *George G. Lindsay,* Assistant Attorney General, and *David Stahl,* Attorney General, for Pennsylvania Liquor Control Board, appellant.

*Thomas D. McBride,* with him *Robert M. Borden, Alan J. Davis, Leo H. Loffel,* and *Wolf, Block, Schorr and Solis-Cohen,* for applicant, intervenor-appellant.

*Matthew W. Bullock, Jr.,* Assistant City Solicitor, with him *George J. Ivins,* Assistant City Solicitor, *James L. Stern,* Deputy City Solicitor, and *David Berger,* City Solicitor, for protestants, appellees.

OPINION BY MONTGOMERY, J., March 19, 1963:

The application of Club Oasis, Inc., intervenor-appellant, for the transfer of its liquor license from 2947 Richmond Street to 547 West Lehigh Avenue, both in Philadelphia, Pennsylvania, having been approved by the Pennsylvania Liquor Control Board, an appeal was taken to the Court of Quarter Sessions of the Peace of that county by the Board of Trustees of the Free Library of Philadelphia and the City of Philadelphia, the present appellees. The Club Oasis, Inc. was permitted to intervene as a party defendant in that appeal. The Quarter Sessions Court, after hearing, sustained the appeal, reversed the board and refused the transfer.

This appeal by the board and Club Oasis, Inc., followed.

The club raises several questions that may be stated briefly as follows: (1) Did the library and city have the right to appeal to the Quarter Sessions Court? (2) Did the Quarter Sessions Court improperly admit into evidence the report and recommendation of the board's examiner? (3) Was the admissible evidence sufficient to support the order of the court? The board raises only the question referred to as (2).

(1) The Free Library of Philadelphia was incorporated as a private charitable corporation in 1891. In 1894, its directors requested the City of Philadelphia to accept a donation of a large number of books, which the city did accept on December 31, 1894, under authority of the Act of May 23, 1887, P. L. 179. Thereafter the city created the Board of Trustees of the Free Library of Philadelphia, composed in part of city officials and their nominees and in part of private individuals. This arrangement was continued by §3-802[1] of the Philadelphia Home Rule Charter. We conclude that the library remains such an institution as to be included in §464 of the Pennsylvania Liquor Code of April 12, 1951, P. L. 90, art. IV, 47 P.S. 4-464 which provides that ". . . any church, hospital, charitable institution, school or public playground located within three hundred feet of the premises applied for, aggrieved by the action of the board in granting . . .

---

[1] Chapter 8 of the Philadelphia Home Rule Charter provides for the organization and operation of "Independent Boards and Commissions". The Free Library of Philadelphia is one of those enumerated. Section 3-802 of the charter provides for the "Board of Trustees of the Free Library of Philadelphia. The Board of Trustees of the Free Library of Philadelphia shall be composed of twenty-two voting members and the Recreation Commissioner. Eighteen members shall be life members of the Board, vacancies among them being filled alternately by election by the Board and appointment by the Mayor."

the transfer of any such license, may take an appeal . . ."

Although the City of Philadelphia is given no specific right of appeal as a municipal corporation, its interest in the present case is equivalent to that of a charitable institution. Therefore, we are led to the conclusion that the City of Philadelphia's responsibility for the successful operation of this independent charitable institution was sufficient to give it standing as a party appellant in the lower court, although it was asserting the same grievance that the trustees of the library were asserting. We do not decide whether a municipal corporation may establish the right to appeal in other cases under the Liquor Code by filing objections with the board. However, it may be noted that in the *Tate Liquor License Case*, 196 Pa. Superior Ct. 193, 173 A. 2d 657, we permitted the City of Philadelphia to file a brief as amicus curiae on a question of constitutionality.

We find no merit in intervenor-appellant's other argument that because the trustees withdrew their original protest to the board that they ceased to be aggrieved.[2] The reason for that action is understandable. At the time of the hearing before the representative of the Liquor Control Board, the trustees expected that the library would soon move from this area and therefore would not be aggrieved should the transfer be granted. Later they learned that their plans for removal had been changed and that they would remain in the present location and would be affected by the grant of the transfer. However, as we view the act, this is all irrelevant. There is no requirement that an aggrieved institution must first file a protest or even appear before the board. The act is specific that any charitable institution aggrieved by the action of the

---

[2] The City of Philadelphia did not withdraw its objection and participated in the hearing conducted by the board's examiner.

board has the right to appeal. At the time the library took its appeal, it contended that it was being aggrieved by the grant of the transfer. That is all the act requires. We have already recognized that the status of such institutions as are given the right of appeal in §464 of the Liquor Code is higher than the status of a mere objector or remonstrant. *Gismondi Liquor License Case*, 199 Pa. Superior Ct. 619, 186 A. 2d 448; *Azarewicz Liquor License Case*, 163 Pa. Superior Ct. 459, 62 A. 2d 78. The cases cited by eminent counsel for intervenor-appellant were all decided under prior statutes which made the filing of remonstrances with the court which had jurisdiction of the matter of granting liquor licenses at that time an important step in the proceedings. To gain standing as a party to such proceedings the filing of a remonstrance was required. The present statute contains no such provision.

The cases of *Pennsylvania Power & Light Company v. Shenandoah Borough*, 362 Pa. 43, 66 A. 2d 290, and *Eichert's Estate*, 155 Pa. 59, 25 A. 824, relied on by the club appellant, are readily distinguished on the basis that in each of said cases the action of the court was in response to the request of the appellant. In the present case the library merely withdrew its objections because it expected to move.

(2) The second question is more perplexing be- cause of this Court's decisions relating to the nature of the proceedings before the lower courts on appeals under the Liquor Code. Although the Liquor Code, prior to the amendment of May 20, 1949, P. L. 1551, 47 P.S. 4-464, provided that the court should hear applications for appeals of this nature "*de novo*", and after said amendment "de novo on questions of fact, administrative discretion and such other matters as are involved", this Court has persisted in its view that this does not mean that the court may exercise its own discretion

after hearing. We continue to hold that only the question of abuse of discretion by the board may be resolved.[3]

Appellants rely on several cases under The Vehicle Code[4] which provides, inter alia, "(b) The secretary may suspend the operator's license . . . after a hearing before the secretary or his representative, whenever the secretary finds upon sufficient evidence . . . [certain matters have occurred]." 75 P.S. 618. On appeal the several courts are ". . . to take testimony and examine into the facts of the case, and to determine whether the petitioner is subject to suspension. . ." 75 P.S. 620. Under these provisions the cases cited hold that such hearings are in fact de novo for a determination of whether the licensee is subject to suspension and that, in such cases, neither the action of the secretary nor the testimony taken before the secretary or his representative is relevant, and are not properly part of the record in the court proceedings. In *Commonwealth v. Emerick,* supra, it is stated, "Following such hearing *de novo* the hearing judge is required to make his independent finding of fact and ex-

---

[3] *Gismondi Liquor License Case,* 199 Pa. Superior Ct. 619, 186 A. 2d 448; *Tate Liquor License Case,* 196 Pa. Superior Ct. 193, 173 A. 2d 657; *Cialella Liquor License Case,* 191 Pa. Superior Ct. 526, 159 A. 2d 64; *DeAngelis Liquor License Case,* 183 Pa. Superior Ct. 388, 133 A. 2d 266; *425-429, Inc. Liquor License Case,* 179 Pa. Superior Ct. 235, 116 A. 2d 79; *Zermani Liquor License Case,* 173 Pa. Superior Ct. 428, 98 A. 2d 645; *William E. Burrell I.B.P.O.E. of W. 737, Liquor License Case,* 172 Pa. Superior Ct. 346, 94 A. 2d 110; *Hotchkiss Liquor License Case,* 169 Pa. Superior Ct. 506, 83 A. 2d 398; *Azarewicz Liquor License Case,* 163 Pa. Superior Ct. 459, 62 A. 2d 78; *East End Ex-Service Men's Association Liquor License Case,* 162 Pa. Superior Ct. 512, 58 A. 2d 194.

[4] *Commonwealth v. Moogerman,* 385 Pa. 256, 122 A. 2d 804; *Commonwealth v. Funk,* 323 Pa. 390, 186 A. 65. See also *Commonwealth v. Emerick,* 373 Pa. 388, 96 A. 2d 370; *Bureau of Highway Safety v. Wright,* 355 Pa. 307, 49 A. 2d 783; *Commonwealth v. Antolich,* 194 Pa. Superior Ct. 300, 166 A. 2d 541.

ercise his discretion whether or not a suspension should be decreed." This distinguishes these cases from those under the Liquor Control Act in which the abuse of the exercise of discretion by the board is the primary consideration.

However, so long as this Court adheres to the view previously discussed and does not consider such appeals entirely anew, the record of the board must necessarily play a part in the court proceedings, so that the tribunal hearing the case may know whether the board had abused its discretion. There is no question as to the board's duty to make records, and to base its decisions on facts found from evidence taken at hearings or from investigations. The Liquor Control Board is an administrative board, 47 P.S. 2-201, and is subject to the provision of The Administrative Code of 1929, 47 P.S. 2-206, which provides for such agencies to keep a full and complete record of their proceedings, 71 P.S. 1710.31, unless it is otherwise *expressly* provided by law. Section 34 of the Administrative Agency Law, Act of June 4, 1945, P. L. 1388, 71 P.S. 1710.34, provides that all adjudications shall be in writing and contain findings and reasons for the adjudication.

There is no expressed release of the board from these provisions. On the contrary, §402 of the Liquor Code, 47 P.S. 4-402, provides for hearings before examiners approved by the governor and for their reports and recommendations to the board. Section 464, 47 P.S. 4-464, expressly provides for the board to make known its reasons for refusing licenses and transfers at the hearings concerning same, and thereafter to file a brief statement in the form of an opinion explaining its actions. Although it may be inferred that the board is released from the provisions of the Administrative Agency Law because it is not specifically required to state its reasons for *granting* licenses or their transfers, we do not interpret this provision as an express

directive contrary to the Liquor Code in such cases. The Legislature undoubtedly recognized that the cases of granting licenses would be much more numerous than those of refusal, and therefore, was not insistent that the reasons for approval be expressed. However, we find nothing in this provision to lead us to the conclusion that the Legislature intended any distinction to be made insofar as making the one a public record and the other confidential, as argued by the board; nor do we find any justification for the conclusion that there is any distinction to be made between cases of refusal and cases in which the right of the board to grant licenses or transfers is questioned on appeal. When an appeal is taken the board should state its reasons. We recognize that in many fields of the law the reports of referees, masters, commissioners, etc., are not binding on the administrative boards or the reviewing courts, but we do not recognize them to be so confidential as not to be available for consideration by reviewing bodies, viz., unemployment cases, workmen's compensation cases, divorce actions, etc.

The Liquor Control Board, in the present instance, failed to file any such writing, but merely granted the transfer and notified the law department of the City of Philadelphia that it had done so: ". . . after reviewing the record in the captioned matter including the hearing examiner's report of the testimony taken at the January 17th hearing, [the board] concluded that in a reasonable exercise of the discretion authorized by law in such cases, the application for transfer of restaurant liquor license should be approved." In *Hotchkiss Liquor License Case*, supra (p. 509), and repeated in the *Cialella* case, supra (p. 530), we said, ". . . it would have been the better part of discretion for the board to have filed 'at least a brief statement' of the reason for its ruling or order granting the license [or transfer] . . .", especially since it had exercised its

discretion in a manner contrary to the policy the Legislature intended to establish in situations where licenses were sought for locations within 300 feet of certain institutions. Having failed to file such a statement or findings of fact on which its decision was based, we think the lower court very properly demanded that the board's complete record be produced for its consideration.

We recognize that in the *Hotchkiss* case the lower court determined the issue of abuse of discretion on its own findings in the absence of any findings of the board and did not require the board to submit its records in the court preceedings.[5] We are aware also of the refusal of our Supreme Court to act on an eminent domain appeal in the absence of disclosed reasons for the action of the board of viewers, which caused it to return the record for an explanation in justification of its action. *McCandless Township Appeal*, 409 Pa. 283, 186 A. 2d 393. However, in cases wherein the lower court hears testimony anew (none was provided for in *McCandless Township Appeal*), we see no reason for delay in such matters by referring them back to the board for such purpose or for rehearing. Therefore we conclude that it was not error for the lower court to inform itself of such reasons by compelling the board to submit its complete record of the case in the proceedings on appeal.

(3) Finally, we turn to a consideration of the evidence taken before the court to determine whether it supports its order refusing the transfer. Without reviewing it in detail, we have no hesitancy in saying that

---

[5] There was one finding made in that case by the board in support of its original action in refusing the application; and no findings were made when it changed its mind and decided to grant the second application. Therefore, this information, as well as the history of these applications as appeared in the board's records, were before the court.

it fully supports the findings that the transfer of appellant's license to 547 West Lehigh Avenue in the City of Philadelphia, 78 feet from the Free Library of Philadelphia and 218 feet from the site of the Faith Revival Tabernacle Church would have a detrimental effect on "the welfare, health, peace and morals of the inhabitants of the neighborhood within a radius of five hundred feet of the place proposed to be licensed" and be of particular grievance to appellants. The mere fact that a site located within 78 feet of the doors of a public library into which 32,000 children and an equal number of adults pass annually, and which had previously been notorious for its demoralizing effect on the community, was being reopened for the sale of liquor was sufficient alone to support the court's finding.

The order of the board must have been based on either a finding that such institutions were not within 300 feet of the new site of the licensee, or a finding that the presence there of a licensed liquor dispensing establishment would not be detrimental to the welfare, health, peace and morals of the inhabitants of the neighborhood within a radius of 500 feet of it, or a particular grievance to the library. The court below, having found to the contrary on all points, was fully justified in reversing the board's decision to grant the transfer and in refusing it on the basis that it found different facts, or that the board had abused its discretion on the same facts.

The opinion of the lower court indicates that its decision was based on the second reason—an abuse of discretion—since it found that the evidence taken before the examiner (the only evidence considered by the board) as well as the evidence taken at the hearing before the court showed that the library and church were within 300 feet of the proposed site and ". . . the area is already supersaturated with such establishments and this constitutes a real burden to our law

enforcement agencies. Moreover, police incidents are multiplied and the health, welfare and safety of the people in the immediate community will be affected in a detrimental manner if this license is granted. . .

"While it is true that the administrative discretion rests with the Board, the exercise of it under the Liquor Code is always subject to judicial review: Zermani Liquor License Case, 173 Pa. Superior Ct. 428. It is most evident that the presence of a licensee at the location proposed would be detrimental to the neighborhood as outlined in this Opinion, and to the church and library in the area. The sole benefit would be that of possible financial gain to the applicant."

After reviewing the record, we are in agreement with the lower court that the board abused its discretion in this case and that the library was aggrieved by its decision.

Order of refusal affirmed.

WOODSIDE, J., concurs in the result.