520 A.2d 558

Board of License and Inspection Review, Appellant
*v.* Jon S. Mirowitz, Appellee.

Argued December 9, 1986, before Judges CRAIG and DOYLE, and Senior Judge BLATT, sitting as a panel of three.

*Steven K. Ludwig,* Assistant City Solicitor, with him, *Flora Barth Wolf,* Chief Assistant City Solicitor, *Marguerite R. Goodman,* Divisional Deputy City Solicitor, and *Handsel B. Minyard,* City Solicitor, for appellant.

*Burton A. Rose, Peruto, Ryan & Vitullo,* for appellee.

OPINION BY JUDGE CRAIG, February 2, 1987:

The Board of License and Inspection Review of the City of Philadelphia filed a notice of appeal to this court following an order of the Court of Common Pleas of Philadelphia County which reversed the board's order and directed that the board grant Mr. Mirowitz a license to carry a firearm.

The record indicates that the board granted Mr. Mirowitz, who is a practicing attorney, a license to carry a firearm in 1977, 1978 and 1979. The license granted in 1979 expired in December of 1980. During 1980, Mr. Mirowitz applied for an extension of that license, which the board denied.[1]

The present appeal arises from the April 1984 refusal of the city's Department of Licenses and Inspections to grant Mr. Mirowitz's application for a permit to carry a firearm.

Before the passage of the Philadelphia Home Rule Charter, 351 Pa. Code §§1.1-100 to 12.12-503, section 109(a) of the Pennsylvania Uniform Firearms Act, 18 Pa. C. S. §6109(a), controlled the issuance of gun licenses in the City of Philadelphia. That section provides:

> The chief or head of any police force or police department of a city, . . . may, upon the application of any person, issue a license to such person to carry a firearm in a vehicle or concealed on or about his person within this Commonwealth for

---

[1] During 1980, Mr. Mirowitz was involved in an incident involving his gun, which resulted in the filing of several charges against him. In the Court of Common Pleas of Philadelphia County, Mr. Mirowitz was acquitted of all charges and the court ordered those charges to be expunged from his record. However, the present record suggests, although not clearly, that the trial court, in 1980, did not consider that incident in upholding the board's denial.

not more than one year from date of issue, if it appears that the applicant has good reason to fear an injury to his person or property, or has any other proper reason for carrying a firearm, and that he is a suitable person to be so licensed.

However, section 5-1000 of the Philadelphia Home Rule Charter, 351 Pa. Code §5.5-1000 now empowers "the Department of Licenses and Inspections [to] exercise the power and perform the duties related to licensing and inspection formerly exercised and performed by all officers, departments, boards and commissions of the city. . . ."

Consistent with that language, Section 5-1002 of the Philadelphia Home Rule Charter, 351 Pa. Code §5.5-1002, provides:

The Department of Licenses and Inspections shall have the power and its duty shall be to perform the following functions:

. . . .

(b) *Issuance of licenses.* The Department shall:

(1) Issue all forms for applications and receive all applications for any license;

(2) Determine whether the applicant is properly entitled to the license which he seeks;

Although the Philadelphia Home Rule Charter vests licensing power in the department, the charter, like the Pennsylvania Uniform Firearms Act, leaves with the Philadelphia Police Department the power to determine the criteria by which the Department of Licenses and Inspections shall issue gun licenses because the latter department is, in effect, acting for the police department.[2]

---

[2] Section 5-1002(4) states:

The requirements and standards to be met by applicants for licenses shall be established by the Department in all

In the present case, the criteria certified by the Philadelphia Police Department are those two factors set forth in section 109(a) of the Pennsylvania Uniform Firearms Act: (1) The applicant must demonstrate good reason to fear injury to his person or property, or any other proper reason for carrying a firearm; (2) the applicant must demonstrate that he is a suitable person to be so licensed.

After a full hearing on appeal in the present case, the board found:

>1. Appellant has not substantiated a need to carry a firearm.
>
>2. Accordingly, the Department's denial of the permit to carry a firearm is hereby affirmed.

The board apparently did not reach a decision as to whether the applicant was unsuitable to be licensed to carry a firearm.

The trial court reversed the board's license denial and ordered the board to grant a license to Mr. Mirowitz. The court stated:

>This Court finds the Board's view in the instant matter not supportive of the evidence. Clearly, Mr. Mirowitz is presently under the same condition that warranted the granting of a license eight years ago. . . . [S]ince Mr. Mirowitz's background has not changed and

---

cases in which the Department is responsible for the functions involved. *In all other cases, the requirements and standards shall be certified to the Department by the officers, departments, boards or commissions for which the Department is acting. The Department, when in doubt concerning the interpretation to be placed on the certified requirements or standards, may consult the certifying officer, department, board or commission, but the Department shall make the decision whether the license should be granted.*

351 Pa. Code §5.5-1002(4) (emphasis added).

since the Board does not present a basis for their decision, this Court is inclined to grant the Appellant a license.

This court must reverse the trial court because we conclude that the board's findings are in fact supported by substantial evidence.[3]

The one-year time limit on a gun license under the Pennsylvania Uniform Firearms Act, as applied here by the department, mandates regular reevaluation of the situations of those who desire authorization to carry a firearm. Accordingly, even unchanged circumstances, as found here by the trial court, cannot conclusively entitle a former licensee to a new license.

In *Lovering v. Dettre*, 41 D. & C. 716, 718 (1941), a gun licensing case, the court observed:

No fixed or certain rule or regulation for issuing such a license can be laid down, because the fitness of every applicant and the reasons advanced are varied and different, so that necessarily every application must be decided upon its own individual facts; and where discretion is vested in an official there usually is a difference of opinion.

In support of the trial court's reasoning, the applicant cites *Hotchkiss Liquor License Case*, 169 Pa. Superior Ct. 506, 83 A.2d 398 (1951), in which the

---

[3] Where the local agency developed a complete record and the trial court took no additional evidence, this court's scope of review is limited to whether the local agency's adjudication violated the appellant's constitutional rights, committed an error of law or violated the provisions of the Local Agency Law, or made findings of fact necessary to support its adjudication which are not supported by substantial evidence. Section 754(b) of the Local Agency Law, 2 Pa. C. S. §754(b). *Wilson v. City of Philadelphia, Board of License and Inspection Review*, 16 Pa. Commonwealth Ct. 586, 329 A.2d 908 (1974).

Pennsylvania Liquor Control Board (LCB) initially denied a hotel liquor license based upon a protest by the membership of an adjacent church.[4] In its order, the LCB specifically referred to that protest as the sole reason for its refusal. When the hotel reapplied for a license the following year, the church again filed a protest. This time, the LCB, without opinion, granted the license. The trial court reversed.

The Superior Court affirmed that reversal, concluding that the trial court had not substituted its discretion for that of the LCB. Rather, the court stated that the trial court had corrected the LCB's abuse of its own discretion. Noting the trial court's finding of fact that "[t]he hotel is 181 feet, 6 inches from the . . . [church]," the Superior Court stated:

> There was no change in the location of the hotel or the church between the first and second applications, and since the board refused the original application because of the proximity of the hotel to the church—and for that reason alone so far as disclosed by the record—if it had any reason for reversing its decision on the second application it should have said so.

169 Pa. Superior Ct. at 508-09, 83 A.2d at 399.

However, in *Lovering,* the unchanging key factor—the distance between the hotel and church—stood alone as the sole basis for license refusal. By contrast, in this case, the earlier license grant and latest refusal

---

[4] Section 2 of an amendment to the Liquor Control Act, Act of May 20, 1949, P.L. 1551, *as amended,* repealed by section 901 of the Act of April 12, 1951, P.L. 90, *formerly* 47 P.S. §9-901, authorized the board to exercise its discretion in considering an application for a hotel liquor or malt license at a location within 300 feet of a church. A similar provision is now found in section 432(d) of the Liquor Code, Act of April 12, 1951, P.L. 90, *as amended,* 47 P.S. §4-432(d).

separately depended upon an array of factors affecting need. The factors which the board could consider in assessing the need for a firearm do not consist of a single objective measure, such as a precise linear distance, as in *Hotchkiss,* but involve subjective evaluation. Additionally, nothing in the present record assures us that the facts here are identical to those included in the previous application.

In its decision, the board discussed the evidence presented at the hearing by the applicant and by a detective from the Philadelphia Police Department. The detective, supporting the department's conclusion that the applicant failed to meet the standard certified by the police department—good reason to fear injury to person or property—testified that the applicant's principal bank is located in an area considered "good" by the police, that the applicant is not on the appointment list for criminal cases, and that the police department strongly opposes the issuance of a gun license for outdoor recreational activities other than hunting and fishing. In support of the application, the applicant testified that he now banks at a different location, and expounded upon his need to carry a gun, specifically, for self-defense while making investigations and visiting clients, when transporting cash related to client matters and bank transactions, and for protection from wildlife while hiking and camping.

The board was entitled to exercise its discretion in reevaluating those subjective factors.

Furthermore, because the board set forth findings to support its decision, we distinguish the present case from *Goodman v. Commonwealth,* 98 Pa. Commonwealth Ct. 371, 511 A.2d 274 (1986), which the applicant suggests requires the board to set forth with greater specificity its reason for denying the license. However, in *Goodman,* unlike here, this court remanded to

the board for a finding of the applicant's need for a gun because the trial court, on *de novo* review, made no finding on that issue, and the trial court's affirmation of the board's conclusion on the other issue, the applicant's suitability to be licensed, was supported by inadmissible hearsay.

The order of the court of common pleas is reversed.

## ORDER

NOW, February 2, 1987, the order of the Court of Common Pleas of Philadelphia County, dated September 3, 1985, at No. 1557 October Term 1984, is reversed.