## Noonday Club of Delaware County, Inc. Liquor License Case.

Argued June 15, 1967. Before ERVIN, P. J., WRIGHT, WATKINS, MONTGOMERY, JACOBS, HOFFMAN, and SPAULDING, JJ.

*Angelo A. DiPasqua,* with him *Caine & DiPasqua,* for appellant.

*James J. Phelan, Jr.,* Special Assistant Attorney General, with him *I. Harry Checchio,* Special Assistant

Attorney General, *Thomas J. Shannon,* Assistant Attorney General, and *William C. Sennett,* Attorney General, for Pennsylvania Liquor Control Board, appellee.

OPINION BY WATKINS, J., September 15, 1967:

These are appeals from the orders of the Court of Quarter Sessions of Delaware County, affirming the decisions of the Pennsylvania Liquor Control Board in revoking the catering club license of the appellant, Noonday Club.

The Noonday Club is a nonprofit corporation formed in 1949 as an eating club. Its members consist of approximately 600 to 700 members who are prominent business and professional men in Eastern Delaware County. The violations in these appeals are the first ever charged against the club.

The board issued two separate citations and both were heard together and the following charges were sustained. CITATION No. 1354: "(1) The licensed organization, by its servants, agents or employes sold, furnished and/or gave alcoholic beverages between the hours of three o'clock ante meridian and seven o'clock ante meridian, on June 6, 7, 13 and 14, 1964. (2) The licensed organization, by its servants, agents or employes sold alcoholic beverages on the licensed premises to non-members without prior arrangements for such services, on June 6 and 13, 1964. (3) The licensed organization, by its servants, agents or employes sold alcoholic beverages on the licensed premises to non-members, on the following Sundays June 7 and 14, 1964. (4) The licensed organization, by its servants, agents or employes refilled State Store liquor bottles on June 26, 1964."

CITATION No. 1856: "(1) the licensed organization was not a bona fide club, operated for the mutual benefit of the entire membership, in that it was operated by and for the benefit of Anthony Kostick. (2) The li-

censed organization employed persons also employed by another licensee, on divers occasions between November 1, 1963 and June 27, 1964. (3) The licensed organization, by its servants, agents or employes failed within thirty (30) days after any change was made in its officers, to report such change in writing to the Board."

The board then issued separate orders in each citation revoking the catering license of the club. We will treat both citations, which grew out of the same audit and investigation, and the violations found in both as the basis of the revocation, as common sense dictates there can be only one revocation. The court below, after a hearing de novo, sustained the findings of the board with the exception of the finding of what is commonly called a "one man" club. The court below found that the record demonstrates that the club was not operated for the benefit of Anthony Kostick to the exclusion of the club membership, as the court below found, "The record, in our opinion, demonstrates that the Club functions as a Club."

The court below said: "The Superior Court has consistently held that the appropriate penalty in such a case is for the Board and not for the Court. Unless there is a material change in the findings, the Court has no right to substitute its judgment for that of the Board." This is a correct statement of the law. *Ashlar Club Liquor License Case*, 203 Pa. Superior Ct. 502, 504, 201 A. 2d 298 (1964). But in the instant case there is a material change in the findings and a reversal of the board on one of the most serious, if not the most serious, of the violations charged.

The Liquor Code, Act of 1951, April 12, P. L. 90, Art. IV, §471, as amended, 1961, September 15, P. L. 1325, §1, 47 PS 4-471 provides, inter alia, as follows: ". . . Upon appeal, the court so appealed to shall, in the exercise of its discretion, sustain, reject, alter or modi-

fy the findings, conclusions and penalties of the board, based on the findings of fact and conclusions of law as found by the court . . ." See *Orsatti Liquor License Case*, 208 Pa. Superior Ct. 314, 222 A. 2d 454 (1966).

It is true that under certain circumstances the most severe penalty of revocation may be imposed on the first violation but an examination of the records of the Liquor Control Board will disclose that it is very rare, except in case of flagrant violations. *Reiter Liquor License Case*, 173 Pa. Superior Ct. 552, 98 A. 2d 465 (1953) ; *Fumea Liquor License Case*, 186 Pa. Superior Ct. 609, 142 A. 2d 326 (1958). It is true that there may be cases such as the *Fumea* case, supra, at page 613, where Judge WRIGHT said : ". . . the sale of intoxicants to minors is a serious violation, and the most effective means of stopping it is a revocation of the license. While the altered findings of fact empowered the court below to reduce the penalty, they certainly did not require such reduction."

In the *Fumea* case, supra, the charge was one of the most serious of all the violations of the Liquor Code in that the licensee permitted minors to frequent the premises and sold "liquor and/or malt beverages to minors". The change in the findings were to the effect that the wife licensee did not make the sales and the sales were of malt beverages only. So the change in the facts still left the violation of sales of malt beverages to minors if not by the licensee herself, by her agents. As Judge WRIGHT said, at page 614: ". . . 'there is a responsibility upon Mrs. Mary E. Fumea as a joint licensee to be on the job to see that the law is not violated'. This is in accord with the well-established rule that a licensee is responsible for the acts of his agents and employees, and may not prevent the revocation of the license by endeavoring to place the blame for violations upon them."

In *Legion Home Association of Monessen,* 195 Pa. Superior Ct. 643, 171 A. 2d 828 (1961), there were ten violations charged and the court sustained only five of the violations and reduced the penalty from revocation to ninety days suspension. It is interesting to note what the late Judge FLOOD said in speaking for this Court: "However, a change in penalty was warranted because of the reversal of the board's first finding to the effect that the club was not operated for the benefit of the entire membership . . . Upon reversal of the finding of the board against the appellee on this charge, we think the modification of the penalty was authorized. Without minimizing the other charges, this was probably the most serious charge brought against the appellee. It is, in effect, a charge that the bar on the appellee's premises was being operated for private profit. . . . This is one of the heaviest charges that can be levelled against a club licensee, since such activity would frustrate the entire policy of the act with regard to club licenses."

In the instant case there was a clear change in the findings of material facts involving the reversal of the board on the most serious charge contained in the citations. The exercise of the court's discretion as to penalty then arose. As the court below exercised that discretion, it was duty bound to take into consideration that the board had imposed the maximum penalty based on violations which included the most serious, the "one man" club violation; and that the club had a spotless record of eighteen years operation until these citations.

"The court of quarter sessions cannot capriciously disregard competent evidence of violations presented in a hearing before it and reverse the action of the board. Although such a proceeding is an administrative one, the court of quarter sessions does not have discretionary power to act in an arbitrary manner."

*Janiro Liquor License Case,* 163 Pa. Superior Ct. 398, 402, 62 A. 2d 102 (1948). In the *Janiro* case, supra, this Court held that it was an abuse of discretion to disregard competent evidence of violations, as such action amounted to the exercise of "discretionary power in an arbitrary manner". Discretionary power is a two-way street and to ignore the failure of the board to sustain its most serious charge that supported the maximum penalty of revocation and the prior excellent record of the licensee is the exercise of discretionary power in an arbitrary manner.

The club also contends that the court below erred in not requiring the board to produce a report and recommendations of the hearing examiner. The position of the court below was that even, if error, it is harmless error. "The record clearly shows violations of the Liquor Laws; appellant does not seem to be contending that these violations did not take place; consequently if the Examiner reported no violations or fewer violations than the uncontradicted record discloses, the Board would be justified in ignoring the report and any recommendations of the Examiner."

This Court in *Club Oasis, Inc. Liquor License Case,* 200 Pa. Superior Ct. 439, 188 A. 2d 792 (1963), affirmed the action of the court below in admitting into evidence the report and recommendations of the hearing examiner. This Court said, at page 444: ". . . Although the Liquor Code, prior to the amendment of May 20, 1949, P. L. 1551, 47 PS 4-464, provided that the court should hear applications for appeals of this nature 'de novo', and after said amendment 'de novo on questions of fact, administrative discretion and such other matters as are involved', this Court has persisted in its view that this does not mean that the court may exercise its own discretion after hearing. We continue to hold that only the question of abuse of discretion by the board may be resolved." See also:

*Lehigh Valley Brewery Workers Case,* 154 Pa. Superior Ct. 141, 35 A. 2d 561 (1944).

This Court then went on to say in the *Club Oasis, Inc. Liquor License Case,* supra, at page 446, as follows: "However, so long as this Court adheres to the view previously discussed and does not consider such appeals entirely anew, the record of the board must necessarily play a part in the court proceedings, so that the tribunal hearing the case may know whether the board had abused its discretion. There is no question as to the board's duty to make records, and to base its decisions on facts found from evidence taken at hearings or from investigations. The Liquor Control Board is an administrative board, 47 PS 2-201, and is subject to the provision of The Administrative Code of 1929, 47 PS 2-206, which provides for such agencies to keep a full and complete record of their proceedings, 71 PS 1710.31, unless it is otherwise expressly provided by law. Section 34 of the Administrative Agency Law, Act of June 4, 1945, P. L. 1388, 71 PS 1710.34, provides that all adjudications shall be in writing and contain findings and reasons for the adjudication."

In the instant case the court below was exercising its discretion to determine whether under the new facts the penalty should be reduced. The report and recommendations made by the examiner may well have been helpful to the court below in making its determination. The report and recommendations should have been admitted.

We find the court below abused its discretion in failing, under all the circumstances, to reduce the penalty. The order of revocation in each citation is reversed; and the penalty in Citation No. 1354 is modified to a suspension of ninety days and the penalty in Citation No. 1856 is modified to a suspension of thirty days.