## Kingwood Holding, Inc., Liquor License

*Gerald I. Roth*, for appellant.

*Steven R. Sasnov*, for Pennsylvania Liquor Control Board.

FRANCIOSA, J., January 15, 1973.—This appeal challenges the legality and propriety of the action of the Pennsylvania Liquor Control Board (herein called the board) in suspending the liquor license of appellant, Kingwood Holding Company, trading as the Rose Garden. The citation upon which the suspension was based charged that appellant permitted lewd, immoral and/or improper entertainment on the licensed premises in violation of section 493(10) of the Liquor Code.[1] We heard the case de novo on August 7, 1972.

From the testimony adduced at the hearing, we make the following

### FINDINGS OF FACT

1. Officer James E. Smith, an enforcement officer for the board, visited the Rose Garden on the evenings of August 13, 1971, and August 20, 1971.

2. While on the licensed premises, Officer Smith made the following observations:

He noticed that a young lady came out of the kitchen area, went behind the bar and took off her blouse. At that time she went up three or four steps onto a stage which was located behind the bar. He noticed she was wearing a bikini-type panty, giving a zebra-skin effect; her breasts were covered with two small pasties one and a half inches in diameter. The juke box was playing and she started dancing. She stood on the stage; she did gyrations, bends, grinds and bent into different positions as to let her breasts fall to the ground. These positions were sometimes while she was facing the crowd, and at other times, she would turn and bend over and have her buttocks toward the crowd. During this time, she kept her feet stationary and moved her body into different positions.

---

[1] Act of April 12, 1951, P. L. 90, art. IV, sec. 493, 47 PS §4-493(10).

3. Officer Smith completed his investigation on August 25, 1971; thereafter, on September 1, 1971, he sent registered mail notice of his investigation to appellant. The notice was returned to the board's district office on September 9, 1971, marked "unclaimed."

4. On September 20, 1971, the board issued a citation to appellant to show cause why a fine should not be imposed or its liquor license and amusement permit suspended or revoked for violation of section 493(10) of the Liquor Code.

5. A hearing was held before the board on the citation.

6. On April 6, 1972, the board issued an opinion which stated in part:

". . . the evidence adduced establishes the following finding of fact:

"The licensee, by its servants, agents or employes, permitted lewd, immoral and improper entertainment on the licensed premises on August 13, 20, 1971 . . .

"The Board has also considered the following record of prior citations issued against the licensee and the penalties imposed thereon, as presented in evidence at the aforesaid hearing: Citation No. 1834, 1969; Citation No. 1720, 1969; Citation No. 1402, 1969; Citation No. 983, 1969 . . ."

7. The April 6th opinion was accompanied by an order of the board suspending appellant's Restaurant Liquor License No. R-18788; the suspension was for a period of 30 days.

## DISCUSSION

Nearly 24 years ago, our Supreme Court found that the Liquor Board's prohibitions against lewd, immoral or improper entertainment are not to be measured against the guarantees of the First and Fourteenth

Amendments: Tahiti Bar, Inc. Liquor License Case, 395 Pa. 355, 150 A. 2d 112 (1959).

A few weeks ago, the United States Supreme Court held that State regulations prohibiting entertainment which could not be called obscene under the Roth[2] line of cases are, nonetheless, valid as the exercise of a State's broad authority under the Twenty-first Amendment. See California v. La Rue, United States Supreme Court, no. 71-36, opinion dated December 5, 1972, 41 Law Week 4039.

As a result of this recent confirmation that regulations incident to the privilege of dispensing alcoholic beverages are not to be viewed against the settings of the First and Fourteenth Amendments, there is perhaps no other area of permissible State action within which the exercise of the police power of a State is more plenary than in the regulation and control of the use and sale of alcoholic beverages.

In the instant appeal, we are not asked to restrict the Commonwealth's broad power to regulate entertainment in places where liquor is sold. What appellant wants us to find is that its suspension was not based upon the board's exercise of such power, but upon the personal standards of the investigating agent.

It is true that the de novo hearing produced testimony of the agent's personal opinion of improper entertainment, and the "yardstick" by which he measured the entertainment in question. However, we need not focus on this area of the record in disposing of appellant's argument.

In order to determine the function and authority of an investigating officer, an examination of board procedures is necessary. Our Superior Court in Noonday Club of Delaware County, Inc. Liquor License

---

[2] Roth v. United States, 354 U.S. 476, 77 S. Ct. 1304, 1 L. Ed. 2d 1498 (1957).

Case, 210 Pa. Superior Ct. 400, 234 A. 2d 27 (1967), has set down a clear description of the involved process of determining a Liquor Code violation at Atlantic 2, page 27:

"However under the act the *board* has the discretion to cite or not to cite under all the circumstances of the case . . . There are many cases where the *board* in the exercise of its discretion may not cite a licensee . . . The liquor control board agent, after he obtains the evidence . . . must make a report to the board; the administrative machinery then goes to work to determine many factors, such as the prior record of the licensee; then a *recommendation must be made by the enforcement division to the board itself, recommending that a citation issue or not; and the board then exercises its discretion whether to follow the recommendation.*" (Italics supplied.)

Our review of Commonwealth exhibit no. 1 clearly indicates the board's adherence to the above-described procedure. Included therein is a certified copy of the board's opinion and order dated April 6, 1972. And, a reading of this portion of the recorded proceedings conclusively establishes that the board, and not the investigating agent, made the following finding of fact:

"The licensee, by its servants, agents or employes, permitted lewd, immoral and improper entertainment on the licensed premises on August 13, 20, 1971."

Nor do we have any hesitation in affirming the board's determination that the entertainment in question violated section 493 in that it was "lewd, immoral or improper."

The courts of this State frequently have been required to pass upon the type of entertainment offered by the licensee in this case. In every one of those instances, the entertainment was found to be lewd, immoral and improper under any definition of these

terms: Tahiti Bar, Inc., supra; Commonwealth v. Hildebrand, 139 Pa. Superior Ct. 304, 11 A. 2d 688 (1940); Newburg Inn License, 29 Northamp. 53 (1943); In the Matter of Revocation of Hotel Liquor License No. H-4222 Peninsula Acres, Inc. Gateway, 45 Erie 371 (1962); Commonwealth v. Anderson, September sessions, 1969, no. 144 (Lehigh County, unreported); Scarcia Appeal, 46 D. & C. 2d 742 (1968) (Lehigh County).

Accordingly, we enter the following

## ORDER OF COURT

And now, January 15, 1973, it is ordered that the appeal of Kingwood Holding, Inc., trading as the Rose Garden, be and the same is hereby dismissed; and the order of the Pennsylvania Liquor Control Board imposing a suspension of 30 days upon the holder of Restaurant Liquor License No. R-18788 is affirmed.